HENRY SWIFT *vs.* ADAM LARRABEE AND OTHERS.

A testator made a provision for a feeble and dependent son by the following condition annexed to a devise of all his real estate to his five other children :—" This devise is on condition that the devisees severally shall annually pay their equal proportion of such sum as may be necessary for the support of my son Henry during his natural life; and in case any dispute shall arise respecting the same I direct that the selectmen of the town of Windham for the time being shall have power to decide what sum shall be annually paid ; and if either of the devisees shall neglect to pay his proportion of such necessary support, or of such sum as said selectmen shall determine, I give full power to the said Henry to enter upon the land of such of them so neglecting, as shall be set off to them as a part of my estate, and to hold the same till the sum due for his support is paid." The lands were situated in the town of Windham in this state, where the testator resided. The devisees soon after conveyed the lands to sundry purchasers and removed from the state. By the conveyances it was arranged that the support of Henry should be charged upon a portion of the lands, and that the rest should be disencumbered, but his assent was not obtained to the arrangement.

Swift *v.* Larrabee.

After the sale the owners of that portion of the lands which were charged, under the deeds, with the support of Henry, were accustomed to meet him annually on a certain day, at a meeting of the selectmen of the town, and to agree with him on the sum to be paid for his support for the year, or, if they could not agree, to refer the matter at once to the selectmen for decision, and the amount agreed upon or fixed by the selectmen, though not satisfactory, was received by him as a compliance with the conditions of the devise. This continued until the year 1862, a period of more than thirty years. At this time a majority of the selectmen of the town were and had ever since been either themselves owners of portions of the devised lands or nearly related to those who were so, and Henry refused to appear before them or to submit the matter to them. The owners of the lands having paid him nothing for the year, he brought a bill in equity making them all parties, praying the court to ascertain the amount then in arrear to which he was justly entitled, and to order that the respondents should pay it, and also to fix his future allowance and make an order for its payment when due. Held, in sustaining equity jurisdiction in the case,

1. That it was no excuse for the neglect of the respondents to furnish the petitioner support for the year 1862, that the petitioner had refused to abide by the award of the selectmen, since if the selectmen had power under the will to make such award, his refusal to submit to their award could not affect the case : and it was a duty resting wholly upon the respondents to agree with the petitioner as to the amount, or, upon failure to agree, to procure the award of the selectmen.

2. But that the board of selectmen was to be regarded, by reason of the interest, or relationship to parties interested, of a majority of the members, as disqualified to act in the matter; and that a court of chancery would have a right to interfere in the same manner that it would have had if there had been no board of selectmen, or if for any other reason the amount to be allowed the petitioner could not be ascertained in the mode provided by the will.

3. That the petitioner had not adequate remedy at law in the provision of the will giving him a right of entry upon the lands charged with his support; the mere possession of the lands, involving care and labor to make them productive, not being in the circumstances an equivalent for the money, for which they were intended only as security; while the division of the lands among numerous owners, would both embarrass the petitioner in getting possession, and constituted in itself a reason for going into chancery that the portions to be contributed by the several owners might be ascertained.

To oust a court of equity of jurisdiction on the ground of a remedy at law, such remedy at law must be obvious, adequate and complete.

The necessity of a party to bring, or his liability to be made defendant in, a multitude of suits, all depending on a single question of law or fact, is not enough to justify a resort to a court of equity, unless there is such a unity of interest on one side or the other as to bring the case within the ordinary rules of equity pleading.

BILL in equity. The facts were specially found by the superior court.

The Hon. Zephaniah Swift, late of Windham in this state,

died on the 27th day of September, 1823, leaving a will, executed on the 24th day of August, 1823, which was duly established in the court of probate, the parts of which material to the present case are as follows :—

"I give to my son Henry Swift the right and privilege of living in the house where I now live, and the right and privilege of the chamber over the kitchen to occupy during his life, to be supplied in the manner hereinafter provided ; and I also give him three hundred dollars in money, to be paid within one year after my decease.    *    *    *    *

"I give, bequeath, and devise to my children, Edward Swift, Lucretia Swift, the wife of Rufus P. Spalding, Emily Swift, Julia Swift and Lucian Swift, all my estate, both real and personal, after my debts are paid, subject to the foregoing dispositions, to be equally divided between them; * * * * * always provided, that this devise is on condition that said Edward, Lucretia, Emily, Lucian and Julia, shall annually pay their equal part and proportion of such sum as may be necessary for the support of my son Henry, in food, drink, clothing, firewood and medicine, in sickness and in health, during his natural life.   And in case any dispute shall arise respecting the same, I hereby direct that the selectmen of the town of Windham for the time being, shall have power to decide and ascertain what sum shall be annually paid for his support.   And if either of my said children, Edward, Lucretia, Emily, Lucian and Julia, shall fail and neglect to pay their part and proportion of such necessary support, or such sum as said selectmen shall decide and determine shall be paid for the support of said Henry, said sum for such support to be paid annually, I then hereby give full power to my son Henry to enter upon the land of such of my children neglecting, as shall be set off to them as a part of my estate, and to hold and possess the same till the sum due for his necessary support shall be paid."

The petitioner was the son of the testator, for whose support provision was made in the clauses of the will recited. He had been feeble and dependent from childhood, and was

now eighty years of age. The testator left also the five other children named in the will. The lands of which the testator died seized were distributed to the said Edward Swift, Lucretia Spalding, Emily Swift, Lucian Swift and Julia Swift, the devisees thereof, who held the same for several years after the testator's death, and then conveyed the same by deeds to other parties. By these deeds the whole support, provided for the petitioner by the will, was charged upon a portion only of the lands, which portion was divided into five parts, each part being required to contribute one-fifth of the sum necessary for the petitioner's support; but this arrangement was made by the parties to the deeds without the assent of the petitioner. From the time of the death of the testator to the execution of the deeds, the devisees annually paid to the petitioner their equal shares of such sum as was necessary for his support, the sum being sometimes agreed upon by the parties and at other times determined by the selectmen upon a reference of the question by the parties to them. Soon after conveying away the lands the devisees removed from this state, and have not since resided therein; nor have they since their removal done or offered to do anything in relation to the petitioner's support, or been requested by him to do anything in relation thereto; but the owners of that portion of the lands which was charged by the deeds with the support of the petitioner have, annually, from the time the deeds were executed to the first day of April, 1861, being a period of more than thirty years, paid to the petitioner such sum for his support as was agreed upon between them and him, or, when they failed to agree, such sum as was decided upon by the selectmen of the town of Windham upon a reference to them for that purpose, and varying from $110 to $210. It was the practice of the devisees while they owned the land, and has been that of the owners of that portion of the land charged by the deeds with the petitioner's support, since the conveyances were made, and until the year 1862, to meet the petitioner at the office of the selectmen of Windham, annually on the first Monday of May, and if they did not there agree upon the sum to be paid for his support the preceding year, to refer the question at once to the selectmen; and the selectmen in every such case have

heard the parties and determined what amount should be paid, and that amount has been accepted by the petitioner, although not satisfied with it, as a compliance with the condition annexed to the devise of the lands ; and the owners of that portion of the lands not charged by the devisees in conveying the same with the petitioner's support, have never interested themselves in the matter of such support, or the amount to be paid therefor, and have never at any time been called upon by the petitioner so to do. The petitioner has received nothing toward his support from any of the respondents for the year ending the first day of April, 1862 ; but those respondents who own the land charged by the deeds with his support, went to the office of the selectmen on the first Monday of May, 1862, according to the practice, for the purpose of agreeing with him upon the sum to be paid for his support for that year, or of having the same decided upon by the selectmen in case they failed to agree ; but the petitioner did not meet them there, and they went again to the same place at the next meeting of the selectmen, on the first Monday of June, expecting to meet the petitioner there, but he did not appear. They thereupon went to his place of residence and informed him of what they had done, and endeavored to agree with him upon the sum to be paid him, but failed ; and the petitioner then notified them that he should not consent to have the question decided by the selectmen, but should carry it to the superior court. The owners of the lands charged by the deeds with the support of the petitioner have at all times been ready and willing to agree with him, if possible, upon the amount to be paid him for his support during the year mentioned, or if they could not agree to have the same determined by the selectmen, and to pay such amount when so agreed upon or determined, according to the provisions of the will. Of the testator's children to whom the lands were devised, Edward long since died without issue ; Lucretia is believed to be dead, leaving issue living in the state of Ohio ; Emily is believed to be living in Milwaukie, in the state of Wisconsin ; Lucian and Julia are believed to be living in Cleveland, in the state of Ohio. Horace Hall, Frank M. Lincoln and Edwin E.

Burnham are, and for three years last past have been select men of the town of Windham, but have not acted on the question as to the amount to be paid to the petitioner for his support for the year ending April 1, 1862, nor for the year next ensuing, nor have they been applied to by either of the parties so to do. The said Edwin E. Burnham is the owner of a small piece of the land charged by the will with the petitioner's support, and is a son of Elisha Burnham who owns another portion of the land; but neither piece is any part of the land charged by the deeds with such support. Adam Larrabee is owner of more than half of that portion of the lands which is charged by the deeds with the petitioner's support, and the said Edwin E. Burnham is a brother of the wife of the son of said Larrabee. The said Frank M. Lincoln married the daughter of the brother of the said Elisha Burnham.

The bill prayed the court to determine and direct what sum should be paid to the petitioner for his support during the year ending on the 1st day of April, 1862, and what sum annually thereafter during his life, or until the further order of the court; and that the court would order the respondents to pay at once the sum already due with interest, and such future sums in advance on the first day of April in each year. All the owners of the devised lands were made respondents to the bill.

The superior court (*McCurdy, J.,*) upon the facts found dismissed the bill, and the petitioner brought the record before this court for revision by a motion in error.

*Halsey* and *A. F. Park*, for the petitioner.

1. The authority conferred upon the selectmen by the will is not exclusive. 1st. The intention of the testator, gathered from the will in connection with the state of facts to which he intended to apply it, is to govern. 2d. The petitioner was, in an especial manner, the object of the testator's solicitude and bounty, and he charged his entire real estate, which was large, with the petitioner's support. 3d. In case the other children would not agree with the petitioner upon the amount of his support, the testator provided a tribunal near at hand

to which the petitioner might apply without trouble or expense, to have the amount determined. This provision was clearly made for the petitioner's benefit, and not for his injury. In this peculiar provision the testator was looking to the interest and welfare of his son, and not to that of strangers who might succeed to the estate. 4th. Conceding for the purpose of the argument that the testator might have so made his will as to exclude the jurisdiction of a court of equity, if that had been his intention, it is perfectly clear that he has manifested no such intention. 5th. The construction claimed by the respondents leads to the absurd result, that Judge Swift, in providing for his son's support, has left the amount of the support to be determined by a tribunal which might be composed of the very persons who were to furnish the support, and to other absurdities. 6th. The petitioner, having always been dissatisfied with the action of the selectmen as awarding him an insufficient support, brings his petition to this court, which, it is conceded, has jurisdiction, unless excluded by the provisions of the will. The selectmen have not been called upon to act for the time embraced in the petition, and have not acted. The petitioner, not having submitted his claim to their arbitrament, they have no jurisdiction over the matter. If the respondents are correct in their claim they could have called upon the selectmen to decide the amount of the petitioner's support without his assent, and their action with notice in his absence would have been valid.

2. If the authority of the selectmen by the will was intended to be exclusive, it was only so in case of a dispute among the devisees, and such original intention has been wholly frustrated by the change of circumstances, and by the action of the devisees and their grantees themselves. The devisees sold the land, a part of it incumbered by the petitioner's support, and a part free of the incumbrance, and this without the consent or concurrence of the petitioner. The persons owning the land incumbered by this arrangement assume to act. But if the petitioner is bound to submit his claim to the selectmen, it is only after an attempt at agree-

ment has been made by all the land owners, his claim being upon the entire estate of the testator; and such attempt at agreement has been frustrated by the action of the respondents and their grantors. Yet such attempt at agreement is an indispensable condition precedent to the jurisdiction of the selectmen. The small number of persons owning the portion of the estate charged by their deeds with the petitioner's support, refuse to agree with him; and then require him to submit to the arbitrament of men owning land charged by the will with his support, and connected with them by relationship and interest. Such was not the intention of the testator, and the petitioner is not bound to it.

3. To hold that the authority of the selectmen is not exclusive, and so to let in a court of equity at the option of the petitioner; or to hold that the original intention has been frustrated and can not now be carried out, and that therefore the aid of a court of equity is necessary, involves no absurdities and works no injustice. A court of equity will administer impartial justice. The strenuous objection made by the respondents to all interference of a court of equity, is proof of the necessity for its interposition to protect the rights of the petitioner.

*Burnham* and *Hovey*, for the respondents.

The superior court has no jurisdiction to grant the relief sought by the plaintiff in this suit. Story Eq. Pl., § 490.

1. The intention of Judge Swift to confer upon the selectmen of the town of Windham *exclusive* power to determine the amount to be paid annually for the support of the petitioner, in case of disagreement between him and the parties bound to make the payment, is clearly manifested in two clauses of the condition annexed to the devise; first, in the clause in which he directs that in case any dispute should arise respecting the amount to be paid, the selectmen should have power to decide it; and second, in the clause which empowers the plaintiff to enter upon the real estate devised and to hold the same till the amount due for his support is paid.

2. This intention is to be inferred from the consequences

which would follow if the power given by the will to the select-
men were concurrent with that of the superior court; for it
is easy to perceive that if the parties might elect which of the
two tribunals they would resort to for the settlement of their
disputes, either of them would have it in his power to deprive
the selectmen of all jurisdiction, and to make the jurisdiction
of the court exclusive, and thus render an important provision
of the will wholly inoperative.

3. The parties interested in the provisions of the will refer-
red to, put the construction upon them which is now insisted
upon by the defendants, very soon after the testator's death,
and have followed it until May, 1862, without apparently
doubting its correctness; and to repudiate this construction
after so long a period has elapsed, and after new parties have
become interested, would be highly inequitable.

4. The will gave to the devisees an estate in *fee simple* in
the lands of which the testator died seized, upon condition
that they should annually pay their equal proportion of such
sum as might be necessary for the support of the petitioner.
But there is nothing in the language of the will which indi-
cates an intention in the testator to restrain the alienation of
the property during the life of the petitioner, or to require the
devisees *personally* to perform the condition upon which the
property was devised; and consequently the devisees had a
right to convey the property as they did, and to perform the
condition by substitution. *Simonds* v. *Simonds*, 3 Met., 558;
2 Cruise's Dig., 24.

5. The arrangement by which the devisees in conveying
away this property charged only a part of it with the support
of the petitioner, made adequate provision for the performance
of the condition by substitution, and as such has been ac-
quiesced in by him for a period of more than thirty years.
The practical effect has been, and is, to release and discharge
the residue of the property and the owners of it, from con-
tributing any thing towards the petitioner's support.

6. The present selectmen of the town of Windham are not,
nor is either of them, so interested in the lands charged with
the support of the petitioner, or so related to any of the own-

ers of those lands, as to disqualify them for the exercise of the power conferred by the will, even if the statutes relating to the disqualification of judges were applicable to them. It makes no difference with Edwin E. Burnham or Elisha Burnham whether the sum required be large or small; for other parties are bound to pay it, and the court finds that they are ready and willing to pay it. This being so, the ownership of Edwin E. Burnham in a portion of the lands does not, nor does his relationship to Elisha Burnham, disqualify him. And the same is true with respect to Frank M. Lincoln, who is a nephew by marriage of Elisha Burnham. The facts found show no relationship between Edwin E. Burnham and the defendant Adam Larrabee.

DUTTON, J. The late distinguished Judge Swift died in 1823, leaving six children, one of whom, the present petitioner, owing to physical incapacity, was unable to provide for himself. He made a will, by which, after making a suitable provision for his widow, he secured a home for the petitioner in the testator's dwelling house, and gave him a legacy of three hundred dollars in money. Subject to these and some other small bequests, he gave the residue of his estate to be divided among the other five children, on condition that they should annually pay an equal part and proportion of such sum as might be necessary for the support of the petitioner " in food, drink, clothing, firewood and medicine, in sickness and in health, during his natural life." The will then provided that in case any dispute should arise respecting the amount of the support, the selectmen of the town of Windham for the time being should have power to decide and ascertain what should be annually paid for his support; and that if either of the five devisees should neglect to pay their portion of such necessary support, or such sum as the selectmen should determine as the amount to be paid annually, the said Henry should have full power to enter upon the land of such devisees neglecting, as should be set off to them as part of the estate, and to hold the same till the sum due for his necessary support should be paid.

It is obvious that Judge Swift regarded the future welfare of this unfortunate son with much solicitude, and that he intended to provide, and supposed he had provided, for his comfortable support, secure against any contingency. He undoubtedly depended very much upon the fraternal regard of his other children, supposing that this would ordinarily be a sufficient guarantee that their brother would not be left to suffer ; but if a difference of opinion should happen to arise, the selectmen of the town might act as friendly mediators between them. It apparently did not occur to him that the petitioner would be obliged to treat with any body but near relatives. The facts of the case show how liable are the plans of parents designed to benefit their children to be frustrated. The children of Judge Swift, with the exception of ,the petitioner, have all removed from the state, and he is left among strangers. They endeavored to relieve the shares of real estate which were distributed to them, from the embarrassing burden caused by the lien of the petitioner, by making it, so far as they could without his co-operation, a charge upon a portion only of the share of each. They then sold, not only what was thus attempted to be cleared of the incumbrance, but the residue also subject to the incumbrance, and the same is now held by over twenty different proprietors, most of them residing in this state but several of them elsewhere. After the lapse of about forty years the petitioner is found advanced in years and without any means of support except this provision in his father's will. Up to the year 1861 the petitioner succeeded in maintaining his existence on the amount either furnished by agreement or by the award of the selectmen, although that amount, varying from $110 to $210 per year, seems sufficiently meager as an allowance to a son of a man of the position and means of Chief Justice Swift. No provision has in fact been made for the time since 1861, although the occupants of the particular pieces specially charged by the devisees have been willing to pay such an amount as the selectmen should award. The petitioner declined having the sum determined by them, as one of the three is an owner of some portion of the real estate of Judge Swift and related to other owners, and another

is a nephew by marriage of another owner. Under these circumstances the petitioner has applied to a court of chancery for aid to enable him to obtain the support provided for him in his father's will.

To this the respondents object, claiming that he has had opportunity to obtain it by the award of the selectmen.

We think this objection can not be sustained, for several satisfactory reasons.

In the first place, by the terms of the will the devisees under the will were to pay such sum as might be necessary for the support of the petitioner. If he and they could not agree, the selectmen of Windham might fix the amount. The obligation was on them to furnish the support at all events. They could in a certain contingency have the amount ascertained by the selectmen and then tender that sum. But this they have not done. It is no answer to this to say that he declined such an adjustment. If they had the right to have the action of the selectmen, on giving him proper notice they could have proceeded in the same manner as if he had given his assent.

In the next place, it does not appear that he had an opportunity to meet all the parties in interest before the selectmen. The will speaks only of the devisees. If it is assumed that the owners of the property succeeded to their rights, the petitioner had the right to enter on all or any part of the land devised. But no application was made to the selectmen except by the owners of particular portions of the land, to which the devisees had attempted without the consent of the petitioner to limit the lien. It would seem to be no more than just, that if the owners of the rest of the land were to be bound by the award, they should have an opportunity to be heard, since he could not, in case of his failure to receive his support, be deprived in this way of his right to enter on any portion of the devised premises.

But the principal question which has been discussed in this part of the case is, whether he was bound to abide by the action of the board of selectmen as it was then constituted. We think he was not. Judge Swift had not specified any individuals by name, as those by whom he wished the amount

of support to be ascertained.　He doubtless supposed that any board of selectmen, elected by the town to take charge of its pecuniary interests, would be competent to make a reasonable estimate, and would be indifferent between the parties.　But he undoubtedly did not anticipate a state of things in which they would have a personal interest in the question.　We can not suppose that he would leave the interests of a son, for whom he made this special provision, for the very reason that he was not physically equal to his fellow men, to the determination of men who would not be qualified to sit as judges or jurors in any case, of however small importance, involving a question between him and the owners of the land.　We think it stands upon the same ground as if no selectmen had been appointed, or as if for some other reason it had become impossible to have the estimate made in the manner provided for in the will.　In such cases it has been the uniform practice of courts of chancery to entertain jurisdiction, to accomplish that which has failed without the fault of the parties, and where full justice will be done by supplying the deficiency.

It has been strongly urged in the next place, that the petitioner has adequate remedy at law, and therefore this petition ought to be dismissed.　At first sight this point presents a graver question than the other.　The will provides that if either of the devisees, naming them, "shall fail and neglect to pay their part and proportion of such necessary support, or such sum as said selectmen shall determine," the petitioner shall have the right "to enter upon the land of such of my children neglecting, as shall be set off to them as part of my estate, and to hold and possess the same till the sum due for his necessary support shall be paid."　This right to enter and obtain his support in that way, it is insisted is an adequate remedy.　We think it is not.　It has been repeatedly held by this court, following a series of decisions in courts of chancery elsewhere, that to oust such a court of jurisdiction, there must not only be a remedy at law, but an obvious, adequate and complete remedy.　*Chipman* v. *City of Hartford*, 21 Conn., 488; *Middletown Bank* v. *Russ*, 3 id.,

135; *New London Bank* v. *Lee*, 11 id., 112; *Weymouth* v. *Boyer*, 1 Ves. Jr.; 416.

The petitioner was entitled to his money, and not merely to the occupation of land, requiring his labor and care. Why can a mortgagee bring a petition to foreclose? He has the right to enter on the mortgaged premises, and occupy them till he gets his pay. His remedy at law is more obvious and adequate than that of the petitioner. But he is held to be entitled to the aid of a court of chancery, because he is entitled to have his debt paid, or have an indefeasible title to the mortgaged premises. The mortgage is given, not as an eqivalent for the money, but merely to secure the fulfillment of the obligation entered into by the mortgagor. The analogy between such a case and the present one is striking.

But the petitioner has still stronger claims than are usually presented by a mortgagee. In the case of a mortgage, the amount to which the mortgagee is entitled is generally fixed by the parties. But in the present case, since the will took effect, a large number of individuals, without any action on the part of the petitioner, have become interested in the amount to which he is entitled. He on the other hand has had greater difficulties interposed to his entry upon and enjoyment of the property. The will evidently proceeds on the ground that the devisees were to retain the possession of the property. If any one of them failed to pay, the petitioner could enter on his portion, and one entry would be enough for the whole portion. But the share of this devisee may now be divided among and occupied by half a dozen individuals. To ascertain how much the land of any one of them is to be charged with, it is necessary to know how much the share of each devisee would be, and that would depend on the amount of the whole support. The owners of the land have equitable rights between themselves, which would ultimately require the interposition of a court of equity, and an objection to this petition does not come from them with a very good grace.

The petitioner, in order to enjoy his full rights at law, would be obliged to bring a large number of actions of ejectment, rendering his remedy by that mode not only very doubtful

and expensive, but extremely vexatious to the respondents. Such a state of things, we think, calls especially for the aid of a court of chancery. We do not hold that the necessity of a party to bring, or the liability of a party to be made defendant in, a multitude of suits, though all depending on a single question of law or fact, gives any claim to equitable interference. The true rule on that subject is clearly stated by Seymour, J., in the case of *Dodd* v. *City of Hartford*, 25 Conn., 238. But in the present case, owing to unforeseen circumstances, a large number of persons have a common interest in having the amount of support settled. The decision of this question in a proceeding against one, will not bind the rest. If suits are brought against each, the amount which any one ought to pay, in justice and equity would depend on what the others would be bound to pay. In the case of *Beach* v. *Hotchkiss*, 2 Conn., 425, where the defendant admitted that he had money which belonged to himself and two other persons, but where the amount was not agreed upon, the court refused to entertain an action at law in favor of one of the other parties, upon the ground that a proceeding in chancery was the only mode in which such a question could with propriety be settled, where all the parties in interest could be heard and all would be bound by the decree. So in the state of New York, in what is called "the omnibus bill," (*The New York & New Haven R. R. Co.* v. *Schuyler and others*, 17 N. York, 592,) where the New York and New Haven Railroad Company brought a petition to a court of chancery, making parties all who held genuine stock and all who held stock which was claimed by the company to be spurious, the Court of Appeals sustained the jurisdiction of a court of chancery, and also overruled an objection to the multifariousness of the petition, on the ground that all the real and pretended stockholders had a common interest in having the question, as to how much stock should be pronounced good as against the company, decided; and that in a suit between any one stockholder and the company, turning upon this question, all the others would have an interest in the decision, and yet could have no opportunity to be heard and would not be bound. Comstock, J., remarks,

" The number of parties and the multiplicity of actual or threatened suits will sometimes justify a resort to a court of equity when the subject is not at all of an equitable character and there is no other element of equity jurisdiction. But in such cases there must be such a unity of interest on one side or the other as to bring the litigation within the ordinary rules of equity pleading." We have no occasion to bring the present case within this rule of equity jurisdiction, as we have seen that it can be supported by plain equitable principles.

There is manifest error in the judgment of the superior court dismissing the bill, and the judgment is reversed.

In this opinion the other judges concurred.

# SUPREME COURT OF ERRORS.

## TOLLAND COUNTY, NOVEMBER TERM, 1862.

### Present,

HINMAN, C. J., SANFORD, BUTLER AND DUTTON, Js.