### JOHN LEGG AND WIFE *vs.* FREDERICK HORN.

*C*, owning two dwelling-houses upon adjoining lots, and having a right to the water from a spring upon land of another party for use at the houses, sold one of the houses to *L*.   In the negotiation he had agreed that *L* should have one-half the water from the spring and that they should at their joint expense lay a pipe from the spring to a point near the houses, from which each should lay a pipe to his own house at his own expense.   This agreement was not put into the deed, nor in writing, but it had a controlling influence in inducing *L* to purchase.   The pipes were thus laid, at an expense to *L* of $100.   After-wards *C* purchased the lot containing the spring, and some time after sold that lot with his dwelling-house to *H*, who bought with full knowledge of the agreement with *L* as to the water and pipes.   After his purchase *H* demanded payment of *L* for the further use of the water, but *L* continued to take it as before, claiming the right to do so under the agreement with *C*.   *H* forbade · *L* to take water from the spring and finally cut the pipes on his own land. *L* had used the water under the agreement for more than fifteen years from the time of the purchase.   Upon a petition for an injunction against *H*, it was held—

1.   That the agreement of *C* with *L* was not a mere license, but that *L* acquired under it an equitable right.

2.   That *L*, by his use of the water under a claim of right for fifteen years, had acquired a legal title to the easement.

3.   That *L* had a right to enter upon the land of *H* to repair the pipes and put the spring in order.

4.   That the remedy by action at law for damages was entirely inadequate, and a court of equity had jurisdiction.

5.   That *H* should be enjoined, not only from doing any act that should prevent *L* from taking water from the spring, but from using the water in any manner that should deprive *L* of the use of one-half of it.

PETITION for an injunction against interference by the respondent with the right of the petitioners to the use of water from a spring; brought to the Superior Court in Tolland County. The following facts were found by the court:

On 3d day of January, 1860, and for some time before, the Hockanum Company owned a tract of land in the town of Vernon, on which was a spring of water. North of this land and adjoining it Andrew J. Colburn owned a tract of land on which were two dwelling-houses about nine rods apart, and nearly opposite each other on an east and west line; the east one of which Colburn occupied as a residence. He desired to sell the west part of the tract with the other dwelling-house and a barn thereon, and the petitioners desired to buy a place for a residence.

The premises which Colburn desired to sell were destitute of water, but he represented to the petitioners that he owned the land on which the spring was situated, and had control of the spring, and could secure and convey to them the right to take water from the spring by a ditch and pipes for the use of the premises, and promised them that in case they should buy the place he would secure to them for the use of the house and premises the right to take one-half of the water from the spring by proper ditches and pipes, and that he and they at joint and equal expense would put and keep the spring in proper condition by mason-work, and would convey the water from it by a suitable ditch and pipe to a spout on the premises designated by a large stone, from which point each party might at his own expense take the water in branch pipes of equal size to the two dwelling-houses. This was agreed upon between them, but was not reduced to writing. Thereupon the petitioners bought of Colburn the west dwelling-house and premises, and he conveyed the same to the petitioner, Ellen Legg, wife of the other petitioner John Legg, by deed, dated January 3d, 1860, and the petitioners immediately went into possession, which possession has ever since continued. The agreement of Colburn with the petitioners regarding the spring of water and taking water from it and his representations regarding his ownership of the spring, and his promise

that he would convey to them the right to use the water at the house and on the premises in question, in case they should buy the same, had a controlling influence with the petitioners in inducing them to buy the property. Immediately after the deed had been given, and in pursuance of the agreement as to the water, Colburn and the petitioners constructed a main ditch from the spring across the land of the Hockanum Company, and across the premises conveyed to a point thereon designated by a large stone, and laid therein a suitable main pipe of one and one-half inches in diameter, and put the spring in good condition, all at their joint and equal expense, the petitioners' half of which was something over $100. From the point of the termination of the main pipe, Colburn conveyed water by ditch and branch pipe to his own house, and the petitioners in like manner to theirs, the pipes being of the same size, three-fourths of an inch in diameter. The work was completed by the 15th of April, 1860, and in June following the petitioners carried the water by a branch pipe, from their own pipe, to the barn.

In January, 1863, the Hockanum Company sold and conveyed the land on which the spring was situated, to Colburn. In April, 1864, Colburn sold and conveyed his own dwelling-house and premises to Frederick Horn, the respondent, and with them the land that he had purchased of the Hockanum Company. His deed was an absolute one, containing no exception of the rights of the petitioners in the spring and water.

After the respondent took his conveyance of Colburn he claimed pay of the petitioners for the use of the spring, and from time to time made the demand, but the petitioners continued to take the water by means of the pipes in the same manner as before, and claiming the right to do so under their agreement with Colburn, until the 16th of November, 1875, when the respondent cut the main pipe on the land formerly owned by the Hockanum Company and entirely stopped the water from going to the premises of the petitioners, and was engaged in diverting the water from the spring at the time the petition was served on him, and has ever since forbidden the petitioners to use the spring and the water from it.

The respondent took his conveyance from Colburn with full knowledge given him at the time by Colburn and the petitioners regarding the agreement as to the spring, and with full knowledge that the petitioners were then in the use and enjoyment of the spring by virtue of the agreement by the ditches and pipes connected with it, and the same were pointed out to him on the premises by Colburn before he took his conveyance, Colburn informing him that he sold him the property as it then was.

Upon these facts the case was reserved for the advice of this court.

*M. R. West* and *B. H. Bill*, for the petitioners.

1.   The petitioners had acquired a complete legal title to the easement, by their fifteen years adverse use of the water. A title to an easement may be so acquired as well as to the fee of land.   *School District* v. *Lynch*, 33 Conn., 330; *Coe* v. *Wolcottville Manuf. Co.*, 35 id., 175.   The fact that the use of the water was under an agreement does not affect the case, so long as an adverse right was claimed under the agreement. *Comins* v. *Comins*, 21 Conn., 413; *Catlin* v. *Decker*, 38 id., 262; *Johnson* v. *Gorham*, id., 513, 521; *Clark* v. *Gilbert*, 39 id., 94; *Bryan* v. *Atwater*, 5 Day, 181; *Barker* v. *Salmon*, 2 Met., 32; *Brown* v. *King*, 5 id., 173; *Sumner* v. *Stevens*, 6 id., 337; Washburn on Easements, ch. 1, sec. 4, § 28.

2.   The petitioners had a clear equitable title to the easement.   The agreement with Colburn was on an adequate consideration, and the right to the water of the spring was a controlling consideration in their determination to purchase. The respondent bought of Colburn with full knowledge of this agreement and of what had been done under it.   *Blatchley* v. *Osborn*, 33 Conn., 226.   The agreement is not within the statute of frauds.   *Eaton* v. *Whitaker*, 18 Conn., 222; *Green* v. *Finin*, 35 id., 178; *Pritchard* v. *Todd*, 38 id., 413.

3.   The remedy by injunction is the proper one.   Kerr on Injunctions, 393; *Roath* v. *Driscoll*, 20 Conn., 533; *Rock Manuf. Co.* v. *Hough*, 39 id., 204; *Keeney & Wood Manuf. Co.* v. *Union Manuf. Co.*, id., 580.   The remedy at law is

wholly inadequate. *New London Bank* v. *Lee*, 11 Conn., 121; *Chipman* v. *City of Hartford*, 21 id., 498; *Swift* v. *Larrabee*, 31 id., 237; *Webber* v. *Gage*, 39 N. Hamp., 182. The injury is a continuing one. *Harding* v. *Stamford Water Co.*, 41 Conn., 87.

*G. G. Sill*, with whom was *J. R. Wittig*, for the respondent.

1. What interest did the petitioners acquire by their agreement with Colburn and the subsequent acquisition of the title to the land and spring by him? Clearly none as against the Hockanum Company, for this company had no knowledge of the acts of these parties. Their right in this land and water was either an easement or a license. Colburn could have granted no easement, as he had no title. Washburn on Easements, ch. 1, sec. 3, § 1. If an easement, it was acquired by prescription or estoppel. It could not have been by prescription, which supposes an ancient grant, because the court has found that it was created by an unwritten contract. Under the ancient doctrine of prescription enjoyment the proper length of time was conclusive evidence of title; at this day it only raises a legal presumption of such title which may be rebutted by other evidence. Washburn on Easements, ch. 1, sec. 4, § 4. Their whole interest was derived from the contract with Colburn. Any presumption of a grant is rebutted by the finding of the court. There could have been no acquisition by way of estoppel, because there was no written grant by Colburn. The statute of frauds prevents the acquisition of an interest in lands, except by a written instrument or by adverse use. Here there is no single element of adverse use. Washburn on Easements, ch. 1, sec. 4, § 26. They went into the enjoyment of the spring, not under any claim of right, but through a contract with the pretended owner, Colburn. The court does not find any adverse use. If Colburn had been the actual owner of the premises, all they would have got by his contract would have been a mere license. The court finds that they used the water by virtue of their agreement with Colburn; this is the base

of the right; there is no other.   An easement implies an interest in the land in or over which it is to be enjoyed.   A license carries no such interest.   Washburn on Easements, ch. 1, sec. 1, § 5.   If it was a mere license, it was revocable by Colburn or Horn.   Washb. on Easements, ch. 1, sec. 1, § 5; id., ch. 1, sec. 2, § 2; id., ch. 3, sec. 4, § 14; id., ch. 3, sec. 4, § 23; *Collins Co.* v. *Marcy*, 25 Conn., 239; *Foot* v. *N. Haven & Northampton Co.*, 23 id., 214.

2.   But it is said that Horn bought this lot with full knowledge of the agreement of Colburn and the petitioners.   But this only proves that Horn knew of the existing license. This could not prevent him from revoking it.   His knowledge was merely knowledge of an agreement entirely ineffective even against Colburn, if the latter had chosen to revoke it. Horn can not be any worse off than Colburn himself would have been.

3.   The court is asked to prevent Horn from cutting the pipe.   But this he had done before the injunction was issued. They also ask that he shall be prevented from going upon his own land at the point where he had severed the pipe and connect with a pipe to his own house.   That he had a right to use the water will not be denied.   Each person can use his own, if in that use he hurts no one else, and sometimes when he does.   The petitioners were not injured because Horn used the water.   A court of equity could not re-connect the pipes for their use.   They received their injury by the cutting of the pipe—not from any use of the water by Horn.   If the injunction is granted, it will not restore the water to the petitioners; it will simply deprive Horn of enjoying what is clearly his own.   A court of equity will not do injustice to one man because it cannot restore to another his just rights.

4.   The mischief having been done before the injunction was granted, the petitioners' remedy was by an action at law. Washburn on Easements, ch. 6, sec. 3, § 4.   That remedy was adequate, and a court of equity should not interfere. *Whittelsey* v. *Hartford, Providence & Fishkill R. R. Co.*, 23 Conn., 421.

CARPENTER, J.   The respondent claims that the agreement of Colburn with the petitioners was simply a license, revokable at pleasure.   We think it was more than a license; it was an agreement for a purchase.   A valuable consideration was paid for it.   It was a part of the sale of the real estate. The agreement in every respect, except the conveyance of the legal title, was carried into effect.   Upon the faith of it the dwelling-house was purchased, and the petitioners expended their money in laying the pipes and fitting the house for the use of the water.   We think the petitioners thereby acquired an unusually strong equitable title; so much so that a court of equity, at any time after Colburn purchased of the Hockanum Company, would not have hesitated to decree a specific performance.   Not only have the petitioners an equitable title, but they have now a perfect legal title.   They used and enjoyed the water under the agreement continuously for more than fifteen years.   It is now well settled that an easement will be acquired in this state by an adverse use of fifteen years.   Washburn on Easements, 19, 66, 67; *School District* v. *Lynch*, 33 Conn., 330; *Coe* v. *Wolcottville Manufacturing Co.*, 35 Conn., 175.   Such use is adverse, if under a claim of right, even though it may have commenced under a contract of purchase or a parol gift.   *Comins* v. *Comins*, 21 Conn., 413; *Catlin* v. *Decker*, 38 Conn., 262; *Clark* v. *Gilbert*, 39 Conn., 94.

The petitioners' title being good, both in law and equity, it only remains to inquire whether they are entitled to equitable relief.

Upon this question we entertain no doubt.   To oust a court of equity of jurisdiction the remedy at law must be obvious, adequate and complete.   *Chipman* v. *City of Hartford*, 21 Conn., 488; *Swift* v. *Larabee*, 31 Conn., 225.   A court of law can only give damages for being deprived of the use of the water.   It is at least doubtful whether damages can be given covering the previous outlay for pipes and fitting the house for receiving and distributing the water.   However this may be, it is certain that a court of law cannot restore to the petitioners the use of the water; nor is there any certain

rule or standard by which the value of the future use can be ascertained. They are entitled to the use of this water. Their right in this respect is such that a court of equity will protect it.

We are of the opinion that the petitioners have a right to enter upon the land of the respondent for the purpose of repairing the pipes and restoring the spring to its former condition, so as to give to the petitioners their proportion of the water from it, and that the respondent should be enjoined from doing any act preventing or interfering with the exercise of such right. He should be further enjoined from diverting or using the water of the spring in any way or manner or for any purpose that shall deprive the petitioners of the use and enjoyment of one-half of it.

The Superior Court is advised to decree accordingly.

In this opinion the other judges concurred.