SAMUEL H. BAYNARD,

*vs.*

THE EVERY EVENING PRINTING COMPANY.

*New Castle, Oct.* 27, 1910.

At law a license cannot create or transfer any interest in land; and it is revocable, though granted for a valuable consideration, and though money may have been expended on the faith of it.

A parol agreement, whereby an owner erecting a new building is permitted to use a drain through the existing building of an adjacent owner, which drain was connected with a public sewer in a street, to carry off the sewage from the new building by connecting with such drain, does not create an express or implied contract giving a permanent right to maintain the connection, but gives him at most only the right to maintain such drain until some other reasonably suitable method of disposing of his drainage into a public sewer is available; and, where such other method is available, it is not inequitable not to restrain the adjacent owner from exercising his legal right to terminate the privilege, though the owner expended money in connecting his pipes with those in the existing building, and the plan was mutually advantageous.

Complainant, owning a building, acquired a parol license to connect the sewage pipe of that building with the sewage pipe of defendant's building, which had a connection with a public sewer. Defendant, desiring to terminate the license, sought to arrange a plan whereby the drainage from complainant's building should be conducted into a street sewer by new pipe carried under the sidewalk independent of the pipes in defendant's building. Complainant rejected the plan on account of the expense thereof. There was no misrepresentation of facts by defendant, and complainant was not misled to his prejudice at the time of the making of the parol license. The plan proposed by defendant to take care of the drainage of complainant's building was the only feasible one. *Held*, that defendant was entitled to terminate the license on giving complainant an opportunity to make another arrangement for the disposal of his drainage.

Where a user originates by permission, an easement cannot be acquired by continued user, unless by some subsequent occurrence it becomes hostile, and thus adverse.

The presumption of a grant from user, without evidence explaining how it began, is defeated by satisfactory evidence which accounts for the use other than under a claim of right.

The burden of proving an easement is on the party asserting its existence, and where he leaves it doubtful it will be resolved against him.

Where a user began by permission, a subsequent conveyance of the servient land to a third person did not *ipso facto* render adverse the user previously permissive.

If there be permission or consent of the owner of the servient tenement to the user at the time when it began, the subsequent user does not become adverse, unless there be something said, or done, showing that the continued user was thereafter under a claim of right arising otherwise than from the original permission and be so continued uninterruptedly for twenty years.

INJUNCTION BILL. On February 18th, 1882, the complainant became the owner of the building located at the southwest corner of Fifth and Market Streets, in the City of Wilmington, immediately adjoining a building located on Fifth Street and extending west to Shipley Street. This latter building, on February 28th, 1883, became the property of Samuel Bancroft, Jr., and through sundry mense conveyances, became the prop-

erty of The Every Evening Printing Company, the defendant, on January 15th, 1906. At the time of the purchase of said property by the complainant, it was occupied by The Every Evening Publishing Company, which on or about May 25th, 1883, removed therefrom to the building now owned by the defendant. Immediately thereafter the complainant demolished his building and erected a new and larger one in place thereof.

The bill alleged that prior to May 25th, 1883, John M. Whitford, an officer of The Every Evening Publishing Company, suggested to the complainant that both of said buildings should be connected with the sewer lying in the bed of Shipley Street, belonging to the Shipley Street Sewer Company, which sewer was afterwards purchased by the City of Wilmington, and that it would be to the advantage of the owners of both buildings to have only one connection with said sewer; that The Every Evening Publishing Company would connect their building and the complainant could, upon payment of a portion of the cost, connect the sewage system in his building with that of said Publishing Company, and thereby avoid the necessity of separate connections for the two buildings.

It is also alleged that the complainant accepted said suggestion, and pursuant thereto paid to The Every Evening Publishing Company $118.00 as his share, or portion, of the cost of said connection, and received in return therefor an agreement between the complainant and the said Shipley Street Sewer Company granting unto the complainant the right to tap and enter said sewer, and the right to connect his sewage system with that of said Publishing Company, and through it with said sewer, and since November 25th, 1883, he has enjoyed that right continuously and adversely. On March 2nd, 1909, the complainant received a letter from the defendant company, of which the said John M. Whitford is an officer, notifying him that the right to use the pipes in its building would be cancelled on March 12th, 1909, and on March 5th, 1909, he received another letter from said defendant notifying him that on March 12th, 1909, the said pipes would be cut and the sewage rights cease. The bill further alleged that the complainant made said connection in good faith and believed that by said payment he

had obtained a legal right to use the pipes running from his building into the defendant's building, and so on into said sewer, and relies upon said payment and upon the continuous and uninterrupted, adverse use, possession and enjoyment of said pipes for upwards of twenty years, and that the execution of said notice would result in wanton destruction of the rights and property of the complainant and that the damage caused thereby would be irreparable. In addition to the usual prayers for subpoena, answer and other relief, the complainant prayed for an injunction perpetually enjoining the defendant, its servants, agents and attorneys from cutting the sewage connection between the two buildings, or in any manner interfering with, or interrupting the right of the complainant to use the pipes running from the complainant's building into the building of the defendant, and so on into the Shipley Street sewer.

The answer admits the allegations of the bill concerning the title to the defendant's property, and avers that the sewage system in the defendant's building was in no way planned, laid out or arranged for the purpose of caring for the sewage from the building of the complainant; that the complainant approached and requested the said John M. Whitford, as an officer or agent of The Every Evening Publishing Company, to allow him, the complainant, to connect with and use the then established sewage system of the defendant, which flowed into said sewer, in order to avoid the great expense to which he would be put if he were compelled to establish his own connection direct with said sewer; that the complainant offered and agreed to pay the cost of said connection, but did not offer or agree to make any payment, or to give any valuable consideration whatever for said privilege of using the sewage system of said Publishing Company; that the complainant, at that time, stated to the said John M. Whitford that the permission so accorded to him was only for the complainant's temporary convenience and advantage, and was not to be considered as a permanent license or right; that it was further understood and agreed that the said Company would have the right to withdraw said privilege at its own option; and that solely in accord with these facts was the complainant permitted to connect

with and use the sewage system of said company. The answer denies that the defendant, or any person for it, applied for or secured a permit from said Sewer Company to allow said complainant to use the tap or entrance into the sewer of the defendant company, and denies the payment of $118.00 by the complainant for any part of the cost of said connection, or for a permit, license or right to tap, enter and use the sewage system of the defendant. The answer avers that the only sum paid to said Publishing Company was the sum of $12.00 on or about September 6th, 1883, solely for the cost and expense incurred by said company in making and establishing said connection. It is averred that while the use and enjoyment of the sewage system of the defendant has been continuous since the time of its commencement, it has at no time been adverse, but has always and at all[1] times been enjoyed with the license and permission of said Publishing Company and its successors in title.

The cause was heard upon bill, answer, testimony and exhibits.

*J. Frank Biggs*, for the complainant.
*Thomas F. Bayard*, for the defendant.

THE CHANCELLOR: The complainant is the owner of a building at the southwest corner of Fifth and Market Streets, and the defendant the owner of the adjoining building fronting on Fifth Street and extending west to Shipley Street. Pipes for conducting the drainage and sewage from the complainant's building are connected with a main pipe running through the defendant's building into what is now a public sewer in the bed of Shipley Street, and into this main pipe the drainage and sewage of the defendant's building also flows, so that the main pipe into the sewer acts as a common drain pipe for both buildings. To prevent a threatened severance of this connection by the defendant is the object of this bill.

The material facts are that the building now owned by the defendant was built by prior owners thereof between February and May, 1883, and prior to the erection of the building of the

complainant, which was built between May and November, 1883. Neither of the old buildings had sewer connections, the sewage of both being discharged into vaults in the cellars. John M. Whitford admittedly represented the owner or owners of the defendant's building when it was erected, and after plans had been made for carrying off the sewage from the defendant's building into the Shipley street sewer, a verbal agreement was made between Whitford and the complainant whereby the complainant, who was then arranging to tear down his old building and erect a new one in its place, should use the main drain pipe of the building now owned by the defendant to carry off the sewage from the complainant's new building through the defendant's building into the Shipley Street sewer, by connecting the same therewith, the cost of making this connection to be paid by the complainant. This plan was mutually advantageous, because it abolished the use of an old cesspool vault on the division line between the two buildings theretofore used in common for both buildings, and provided an outlet for the drainage from the complainant's building at much less expense than any other method of drainage which would remove sewage in a sanitary way entirely from the complainant's premises, as there was then no sewer in Fifth Street or Market Street into which the complainant's property could be drained. This arrangement was carried out and existed to the time of the filing of the bill. In March, 1909, the defendant gave notice to the complainant that the right to use the sewer pipe through the defendant's building would be canceled after a named date and thereafter the right should cease, and threatened to cut off the connection at the party wall between the two buildings; the defendant claiming that the right given was a revocable license. It is urged by the complainant (1) that the parol agreement for the easement having been acted on by the complainant, and he having paid a share of the cost of the common drain pipe, there arises an equitable estoppel which makes it inequitable for the defendant to terminate the easement; and (2) that, though the right was acquired by contract and not by deed, the complainant has by a continued, open and adverse user, enjoyed as of right

for a period of twenty-three years, acquired a permanent ease-ment in the defendant's land, and that he is entitled to equita-ble relief against the threatened destruction of his easement.

There is in this case no grant of the easement to comply with the statute of frauds, the arrangement above referred to being entirely oral and not in writing, or by deed. The complain-ant acquired no interest or estate in the defendant's land by virtue of the agreement, but only a license. At law a license cannot create or transfer any interest in land, and is always revocable though granted for a valuable consideration and though money may have been expended on the faith of it. This principle is stated clearly by Chancellor Bates in his val-uable and illuminating decision in *Jackson & Sharp Co. v. Phila. etc., R. R. Co.*, 4 *Del. Ch.* 180, 191, and in his notes to that case.

There was no contract, either written or verbal, by which there was given to the complainant the perpetual use of the sewer pipe through the defendant's land for the purpose of draining the property of the complainant, or any contract by which there was any restriction upon the owner of the defend-ant's land against the disconnecting of the sewer pipe from the sewer pipes for the complainant's land. The arrangement con-cerning the joint use of the pipes was made by the complain-ant and Whitford, and nothing appears in the record to show any words which passed from one to the other tending to show that there was any concession to the complainant of an enduring privilege. In this case, then, there is no ground for the princi-ple of part performance of an oral express contract concerning an interest in land such as in some cases justifies a court of equity to enforce a contract contravening the statute of frauds. Nor is such a contract to be implied from the acts of the par-ties. In his bill the complainant does not allege a contract for a permanent privilege, but in his evidence clearly states that he thought he was acquiring such, and Mr. Whitford in his testimony is equally positive that there was no intention to confer such permanent use. It was clearly mutually advanta-geous that the complainant should be allowed to attach his drain pipe to that in the defendant's building, for in this way he obtained an outlet not then available for discharging his

sewage and he and his neighbor were thereby rid of cesspools. But the pipe that the complainant paid for was of no use to the defendant's building, and was not and has not been used for it, and was put in solely for the complainant, and the complainant did not pay for any part of the sewage drainage system of the defendant's building. There was no common system originally planned, but the complainant was allowed to bring his sewer pipe into the adjoining premises and connect with that already planned when the arrangement was made for his doing so and actually built when the connection was made, and the defendant's building would have had the same drain pipes for its own drainage if no such arrangement had been made with the complainant. It was not the case of the mutual dedication of land for an alley for two or more adjoining lots by the owners thereof. If there had been a public sewer or other method of drainage then available to the complainant for drainage, it is probable that the privilege would not have been sought or given. From this it is but a step to assume, if any assumption at all is to be made, that it was intended the arrangement should continue until such time as the complainant was reasonably able to obtain an outlet for the sewage from his building in some other way. Certainly no inference can be drawn for a longer continuance of the privilege, and it is not a fair implication to say that Mr. Whitford intended at all events and whatever might arise, as to future uses of the servient tenement, it should be burdened with this privilege as a perpetual indefeasible one. If it appear that there is a public sewer or some other drainage system now reasonably available to the complainant for draining his building otherwise than as it now exists, the defendant should not be bound to continue the privilege, unless the complainant has in some other way acquired an enforceable right to a continuance thereof.

Viewing the transaction in question only as a parol license, and not as a contract, express or implied, it is claimed that by reason of the expenditure of money by the complainant the licensee cannot be put in *statu quo*, and the defendant is estopped from revoking the license. This means that though the defendant has a legal right to revoke there are equitable reasons why

it should be restrained from doing so. From the evidence it appears that prior to the giving of the peremptory notice to the complainant in March, 1909, the defendant tried to arrange a plan whereby the sewage and drainage from the building of the complainant should be conducted into the Shipley Street sewer by a new pipe carried under the sidewalk independent of the pipes for the building of the defendant; but this plan was rejected by the complainant on account of the expense thereof, and then the efforts to adjust the difference ended. It is not in evidence whether there is now a public sewer in either of the streets upon which the complainant's land abuts, and it is safe to assume that there is not; otherwise the plan above mentioned would not likely have been suggested.

Viewing the arrangement respecting the pipes, not as giving by implied contract a permanent right to maintain the pipes in all events, but rather as giving the privilege to maintain them there until such time as some other reasonable plan for draining the building of the complainant should be available, by the refusal of the complainant to adopt the new plan above mentioned, it being apparently a reasonably suitable one, the defendant was entitled to relieve itself of the burden of the privilege given to the complainant, and the complainant could not thereafter insist upon a continuance of the privilege, a further continuance being inconsistent with the implied contract. If, therefore, the complainant has not otherwise acquired an easement to maintain the sewer pipes, the defendant had a legal right to revoke the license, and there was nothing inequitable in its insistence on its legal right to do so. There was no misrepresentation of a matter of fact; the complainant was not misled to his prejudice by the then owner of the defendant's property, or by the defendant; and there was no conduct of the latter which now renders it an act of bad faith to terminate the privilege or inequitable for it to now exercise its legal right to cut off the pipe of the complainant. If the controversy had arisen soon after the complainant had built his building, or at the time when no other way to drain his building existed, a different conclusion might have been more just. In all cases of this character, the principles of fair dealing must control

according to the particular facts in each case; the Court being impressed with the sense of duty to deal justly by all parties.

In reaching this conclusion great regard is given to the opinion of Chancellor Bates in the case of *Jackson & Sharp Co. v. Phila., etc., R. R. Co.*, 4 *Del. Ch.* 180, as being alike on several material points.  There the bill was to restrain by injunction the taking up a side track made by the defendant at the expense of the complainant to connect the premises of the complainant with the main line of the defendant.  Subsequent to the laying of the side track, the complainant expended large sums of money in erecting car works on its lands.  After a user of the track for cars passing from the complainant's works for about seven years the defendant gave notice of its intention to take up the side track.  The learned Chancellor held that at law the license to use the defendant's tracks did not create or transfer any interest in the land, and hence at law such a license is always revocable, though granted for a valuable consideration, and though the licensee may have expended money on the faith of it, as it did in paying for the side track and erecting buildings on its land for a business in prosecution of which the track was used. This rule is modified in equity, and the right of revocation will be restrained if there be such conduct as would render the assertion of the legal right a fraud.  Speaking of equitable estoppel, the Chancellor said:

"Its effect, when applied, is to restrain a party from exercising his legal right, and this even a court of equity cannot do unless there have been on his part some conduct, declaration or improper concealment, misleading an innocent person to his prejudice and rendering the assertion of the legal right against such person an act of bad faith, amounting to constructive fraud."

The Chancellor further held that a grant of a privilege which was accessory to a permanent business is presumed to be commensurate in duration with the business, and although at first a license, and as such revocable, yet when acted on in the expenditure of money it becomes a contract for a valuable consideration to be enforced in equity as a contract partly performed; yet that this principle must always depend for its

application in any particular case upon the presumed intent of the parties that the privilege should be commensurate with the business as a right perpetual and indefeasible in all events, and not merely as a voluntary accommodation to abide the good will and mutual interests of the parties.   He decided that there was only a parol license for the permissive use of the tracks and not a contract for the right, express or implied, and thus sums up his conclusion in denying the right to the injunction:

"Looking to all the circumstances of the case, it is my conviction that although the connection of the car works with the railroad was doubtless contemplated on both sides as one to be in fact permanent, yet that no stipulation to that effect was asked or given, or supposed by either party to have been given; but that the arrangement was tacitly left to rest upon the general understanding with respect to such accommodations, Jackson & Sharp either not anticipating the contingency which has now happened, or trusting to the mutual interest and good will of the parties as a sufficient guaranty for the permanence of the connection, without securing it as a legal right according to prescribed forms of law. Their disappointment certainly involves them in no little hardship.   But hardship is not a ground for equitable relief, except in favor of one who, without any negligence in securing his rights by the appropriate legal modes, has been misled to his prejudice through some fraud or laches of the party against whom the relief is sought, or by such conduct of the latter as renders it an act of bad faith to take advantage of the mistake."

It is too violent a presumption, and an unreasonable one, to assume that the privilege granted the complainant was intended to be commensurate with the existence of his building and as a permanent accessory thereto.   The utmost limit of the presumed use would be until such time as some other suitable way for disposing of his sewage into a public sewer was provided.   Viewing the facts in the case before the Court in the light of the decision of Chancellor Bates, it is quite evident that it was not the presumed intention of the parties that the privilege should be a perpetual, indefeasible right in all events, and that the land of the defendant should be perpetually burdened by the pipe of the complainant; but the arrangement was tacitly left to rest upon the good will of the parties as a sufficient guaranty of the permanence of the use, so long as no other reasonably available plan for draining the complain-

ant's premises was presented; and there was no conduct of the then owner of the defendant's land which makes it an act of bad faith on the defendant's part to take advantage of the complainant's mistake as to the permanence of the privilege he acquired.

Did the complainant acquire a perpetual easement by an open, adverse, continuous use for more than twenty years? There was a continuous user for more than twenty years. The use was open, in that the existence of the pipes was subject to observation and was known to the defendant when it acquired ownership, Whitford being the agent for the grantor or grantors of the defendant as well as agent of the defendant, and his knowledge would be the knowledge of the defendant and the use was acquiesed in by the defendant and its grantors. It remains to be considered whether the user was adverse. The sewer connection was made June 30th, 1883, the then owners of the servient tenement being the Every Evening Publishing Company. By deed dated December 31st, 1885, the Every Evening Publishing Company conveyed the premises to the Every Evening Printing Company, whose charter expired November 15th, 1905, and the trustees for said defunct company conveyed the premises to the defendant on January 15th, 1906. In none of the deeds was there a reservation of the drain or other reference, direct or inferential, to the existence of the drain. The complainant claims that there was a parol agreement for the easement by reason of which the user was of right, and, therefore, adverse, and also urges that the conveyance of December 31st, 1885, revoked the original license theretofore held as of right, and thereafter the user was adverse.

Several cases were cited by the complainant to show that the use of an easement under a claim of right by virtue of a parol contract or agreement is adverse. *Stearns v. Janes*, 12 *Allen* (*Mass.*) 582; *Legg v. Horn*, 45 *Conn.* 409; *Arbuckle v. Ward*, 29 *Vt.* 43; *McKenzie v. Elliott*, 134 *Ill.* 156, 24 *N. E.* 965; *Talbott v. Thorn*, 91 *Ky.* 417, 16 *S. W.* 88; *Boyd v. Woolwine*, 40 *W. Va.* 282, 21 *S. E.* 1020; *Jewett v. Hussey*, 70 *Me.* 433. But the cases in Delaware do not so hold. Here, if the user originates by permission, an easement cannot be acquired by continued

user, unless by some subsequent occurrence it becomes hostile and so adverse.   In *Derrickson v. Springer*, 5 *Harr.* 21, the Court said:

"The right of way by usage must be on proof of uninterrupted, adverse usage for twenty years and upwards, in opposition to the owner of the land, and without any reference to a permission or license from him."

The case of *Pennington v. Lewis*, 4 *Pennewill*, 447, 56 *Atl.* 378, was an action of trespass *quare clausam fregit*. The *locus* was an alley or driveway between the land of the plaintiff and defendant.   The defendant claimed paper title to one-half of the alley and also an easement in all of it by user.   The Court charged the jury in general terms as to the acquisition of an easement by user:

"If such use was not under a claim of right, but under a license or permission from the owner of the land, a right of way by prescription could not thereby be acquired; since a license negatives adverse right."

Other Delaware cases, *O'Daniel v. Bakers' Union*, 4 *Houst.* 488, and *Clawson v. Primrose*, 4 *Del. Ch.* 643, do not throw any light on the question considered here.   The case of *Cooper v. McBride*, 4 *Houst.* 461, is instructive with reference to the case under consideration.   There owners of land on an alley leading to a public road made an arrangement by which the owner of land farthest from the road should have a right to use the alley to reach the road if he would move back his fence in order to widen the alley.   This was done and the use of the alley in common by the owners of the two lots continued for more than twenty years, and until the owner of the servient tenement put a gate across the mouth of the alley at the public road.   This gate the defendant, owner of the dominant tenement, broke down, and hence the action of trespass, to which the defense was the easement.   The plaintiff's predecessor in title had the right to the alley before the arrangement above preferred to was made, and gave the defendant's predecessor in title the right to use the alley upon his doing some act, viz., setting back his fence. In that case the Court, according to the complainant, should have instructed the jury that the defendant's user of the alley

was adverse, because it originated in an agreement and was therefore a user as of right and adverse. But the Court did not so charge, but charged that, if it was commenced by permission, such permission was presumed to have continued, and that the plaintiff might show in rebuttal that, though used by permission originally, it might subsequently have been used as a matter of right and in hostility to the rights and title of the owner of the soil. It was said:

"For notwithstanding the use of it by the defendant, and those under whom he claims, may have commenced by the permission of the owner of it, and if so, is presumed to continue by permission, yet it might become at any time afterward adverse in its character upon its being used and enjoyed as a right and in hostility to the rights and title of the owner of the soil; and in case such an adverse use so acquired has continued uninterruptedly for twenty years, it will have grown and matured into a right of way which cannot be successfully controverted or resisted by the owner of the ground over which it is claimed. But the legal presumption of the continuance of the permission in such a case, may be rebutted and denied by any evidence sufficient to satisfy the jury that after the permission was granted, the way was used and enjoyed adversely and under a claim of right."

The Court must have meant, and it must be true in principle, that if there is a permission or consent of the owner of the servient tenement to the user at the time when the user began, the subsequent user does not become adverse, unless there be something said or done showing that the continued user was thereafter under a claim of right arising otherwise than from the original permission and be so continued for twenty years uninterruptedly. If this be not so, then there is no meaning to the rule that an easement cannot be acquired by prescription if the user was permissive, and that the user must be adverse or hostile. The claim of right must be based on something other than the original transaction, if that be a permission, for its continuance as a permission is presumed until rebutted. There is a presumption of a grant from user, without evidence to explain how it began, and satisfactory evidence which accounts for the use otherwise than under a claim or assertion of right rebuts and defeats the presumption. *Garret v. Jackson,*

20 *Pa. St.* 331; *Pierce v. Gould*, 42 *Pa. St.* 102; *Taylor v. Gerrish*, 59 *N. H.* 569. As pointed out by the defendant's solicitor the complainant in his testimony repeatedly and clearly stated his reliance on the original arrangement as the sole source of his right to the easement.

In this case before the Court there is nothing, either word or deed, to show that the permission given did not continue to the time of the threat to disconnect the pipes of the complainant, except the conveyance of the servient tenement, and unless this operated as a revocation, so that thereafter the user was by reason of the conveyance hostile and adverse, and such later user so continued for more than twenty years, the complainant did not acquire the easement to maintain the pipes to discharge his drainage through the pipes on the defendant's land. But whether the principle contended for by the complainant's solicitor, that user by virtue of a parol agreement granting it was adverse, be correct or not, there was in this case no actual, clear agreement such as was shown in the cases cited by the counsel for the complainant. The case of *Stearns v. Janes*, 12 *Allen* (*Mass.*) 582, was a typical one. There in an action of trespass the defendant relied on a right to use a well on the land of the plaintiff and a way to it by user. The well was dug at the mutual expense of the then owners of the lands of the plaintiff and defendant, and the Court charged the jury:

"If the jury were satisfied that the original parties to the transaction dug the well under a verbal contract that they should own and have the right to use the well and the way in common, and thereupon the defendant and his grantors began and have since continued the use under a claim of right, such use would be adverse and would ripen into a title."

The Court on appeal[1] approved the charge and held:

"If the use of a way is under a parol consent given by the owner of the servient tenement to use it as if it were legally conveyed, it is a use as of right. * * * But the character of the use or occupation depends upon the language used and the manner of the enjoyment. If the language is such as to create only a license or a lease, the enjoyment is regarded as permissive, and not as of right, and no title is acquired by it."

*Legg v. Horn*, 45 *Conn.* 409, is a clear case of a parol grant and not license. As the Court said, the right to take water for the use of the occupants of the house was part of the agreement for the sale of the house, the seller being then the owner of a right to take the water for the house sold and for another house owned by him. In other words, it was held to be a parol purchase of an easement. *McKenzie v. Elliott*, 134 *Ill.* 156, 24 *N. E.* 965, was a case where at the time of purchasing a building lot the seller assured the buyer that a strip of adjoining land would be left as an alley, and the purchaser built her house and used the alley for twenty years. Held, that she had acquired it by prescription. This is another case of a parol grant and not a license. These cases all depend on an agreement granting the right and are in this respect like the case of *Barrett v. Jefferson*, 5 *Houst.* 477. In that case Elizabeth Jefferson, owning a tract of land, allowed her son, Cyrus, to take possession of it, and he continued in possession for more than twenty years, and in an action of ejectment against his devisee, brought by a devisee of his mother, the defendant claimed title by prescription. The question was whether Cyrus was given possession as tenant with a right to purchase the land or as vendee. The Court instructed the jury, that the taking possession by him under an agreement to buy, taken in connection with his living thereon and acting as a purchaser, and holding and using and enjoying the land as if the actual owner thereof in his own absolute right, was evidence that his possession of the premises was adverse from the beginning as to her. It would have been otherwise if he had entered as tenant, unless there had been a repudiation of the tenancy. The alleged agreement was not a license or permission, but a parol agreement of purchase, whereby the possession was acquired as part of the agreement. Necessarily it was adverse to the vendor. This case is like *Stearns v. Janes* and *Legg v. Horn*.

In the case at bar there is no such agreement. The complainant and the predecessor in title of the defendant did not together and at joint expense construct a common drain pipe for the building of both under an agreement that the complainant should thereafter have perpetually, or for any length

of time, a right to drain his building through it. The building of the defendant was planned and built before that of the complainant, and the drain pipes of the latter were not changed to suit the complainant; but to get rid of a certain cesspool the complainant was given permission to connect his drain pipe with that in the defendant's building, and nothing is shown to have been said or done to show anything more as to the arrangement. No agreement for a perpetual or continued user is alleged or shown, and it is not alleged in the bill that the agreement gave, or was intended to give, the complainant a perpetual user of the drain in the defendant's building. A clear case of permissive user exists here, as clearly as in .the case of *Cooper v. McBride* cited herein, and the law in that case is applicable here. After the making of the arrangement nothing arose to change the permission, either to a contract or to an adverse user, except perhaps the conveyance of the legal title of the servient tenement to the defendant. The presumption of a continuance of the permission, if not rebutted by the conveyance, exists as a factor here and determines that no easement was acquired by the complainant. The burden of proof of the easement is on the one who asserts its existence, and if he leave it doubtful it will be resolved against him. *Cooper v. McBride*, 4 *Houst.* 461; *Barrett v. Jefferson*, 5 *Houst.* 477. It is quite clear that the Court meant to hold in *Cooper v. McBride*, that the right to the user must have been claimed by some affirmative act, word or deed said or done subsequent to the original transaction, and that a mere continuance of the user was not of itself a claim of right, for otherwise the presumption of a continuance of the original permission would be futile and misleading.

It is claimed by the solicitor for the complainant, and admitted by the solicitor for the defendant, that the conveyance of the servient tenement without a reservation operated as a revocation of the right. The complainant draws the conclusion that after the conveyance in 1885, the user was adverse because of such revocation of any previous permission. No authority for this latter proposition is shown except the case of *Eckerson v. Crippen*, 110 *N. Y.* 585, 18 *N. E.* 443, 1 *L. R. A.*

487. There the right in question was to have a flow of water for household purposes from a spring on the servient tenement to the adjoining land by a pipe of a certain size, and after the commencement of the user, the owner of the servient tenement granted by deed to a third person permission to use the same spring by taking water from the pipe to the plaintiff's land by a new pipe, and so practically cut off the plaintiff's supply, if the stranger had used the full capacity of his pipe. This act of the owner of the servient tenement was considered to be a revocation of the permissive use, and thereafter user was adverse, being asserted as a right, and the use acquiesced in. It will be observed, however, that in the case cited there was not simply a conveyance of the servient tenement, but the owner of the spring by deed granted to a third person a right to use all the water, and the third person by physical act asserted his right to all the water, and the user thereafter of any of the water by any one else than such grantee was injurious to the latter; so that one who in invasion of such grantee's right continued the injurious user, asserting his right to do so, acquired by such continued user, acquiesced in by the one entitled to all the water, a permanent right to water for his house. In the case at bar, there was nothing but the conveyance of the servient tenement, and in the absence of some authority, or some reasonable principles shown for it, a mere conveyance of the legal title to the servient tenement will not render the subsequent user *ipso facto* adverse. Therefore it has been held that, when the user begins by prescription, its continuance after a conveyance of the servient tenement will not, solely by reason of the conveyance, be deemed adverse. *Bennett v. Biddle*, 140 *Pa. St.* 396, 21 *Atl.* 363, and the same case in 150 *Pa. St.* 420, 24 *Atl.* 738.

Briefly stated the conclusions are: (1) That there was no express or implied contract that the complainant should have a permanent indefeasible right at all events to maintain his drain pipe connected with the pipe in the defendant's building, but at most to maintain it until some other reasonably suitable method of disposing of his drainage into a public sewer was available. (2) That inasmuch as there was such other method now available, it was not inequitable not to restrain the defendant from

now exercising its legal right to terminate the privilege, though the complainant had expended money in connecting his pipes with that in the defendant's building. (3) That there was no fraud or misrepresentation, or other conduct on the part of the defendant, or its predecessors in title, in dealing with the complainant, which renders it unfair that the complainant should not have what he thought he had secured, but which he had failed to secure by proper legal method. (4) That inasmuch as the original user began by permission, such permission was presumed to continue until it be shown that the user became hostile, and therefore adverse, as well as under a claim of right, and there was no evidence to rebut the presumption of the continuance of the permssion. (5) That the conveyance of the defendant's land to the defendant did not *ipso facto* render adverse the user theretofore permissive.

In view of the conclusion reached it is unnecessary to pass upon some other questions raised by the solicitor for the defendant, including the contention that the defendant had no legal right to grant the permission originally given, because to do so would violate the rules of the Shipley Street Sewer Company, as to which matter much testimony was taken and elaborate argument had on both sides. The conclusion, therefore, is that the complainant has not established the right to continue to connect his drain pipes with that of the defendant, and the defendant had and has a right to sever the connection. The restraining order will be dissolved and the bill dismissed with costs against the complainant. But inasmuch as it would be unreasonable to allow the sewer connection to be severed without some opportunity to the complainant to make some other arrangement for disposing of his drainage, if an application be made by the complainant to delay for a reasonable time the making of the order proper under this opinion, the application will be granted.