HAROLD W. HILL and GRACE B. HILL, his wife,
Plaintiffs,

*vs.*

LEOTA BERTRAND and ELINORE SHEEHAN,
Defendants.

*Sussex, May 23, 1960.*

*Arthur Dean Betts, Georgetown,* for plaintiffs.

*Everett F. Warrington,* Georgetown, for defendants.

MARVEL, Vice Chancellor: Plaintiffs in September 1958 completed the purchase of a plot of ground in Lewes having an area of some twenty-five thousand square feet at the rear of lands owned by

one Gordon Counselman. The Counselman lot and that of the defendant, Leota Bertrand, which adjoins the Counselman lot on the northeast and plaintiffs' lot on the northwest, front on Pilottown Road. Plaintiffs' lot since 1948 has been used by them as a vegetable garden worked by Mr. Hill.

Plaintiffs allege in their complaint that defendants, commencing in October 1958, have committed daily acts of trespass on plaintiffs' land, such trespasses consisting of driving a motor vehicle across a strip of land some forty feet in width at the northeasterly end of plaintiffs' lot and in preparing to install a permanent paved road across such strip to a garage owned by the defendant, Leota Bertrand, just beyond the claimed northwesterly boundary of plaintiffs' lot. The complaint sought injunctive relief against such alleged continuing trespasses as well as the further removal of trees, hedges and other vegetation growing on property claimed to be owned by plaintiffs as well as damages. Defendants' purpose in crossing the strip in question has been to reach a two car garage admittedly situate on their lands, no other means of access to which by motor car now exists. Defendants claim they have a right to make use of this strip because of what they contend has been the continuous, adverse and open use by them and their predecessor occupants of the Bertrand homestead of such right of way over a period of twenty years and upwards.

On May 20, 1959, this Court entered a preliminary injunction restraining defendants from making any further changes in the area being used by them for a right of way but permitting them to continue to use the area in question for the sole purpose of entering and leaving their garage pending final hearing. The case having come on for trial, the matter now for decision is whether or not plaintiffs are entitled to a permanent injunction against defendants' alleged continuing trespasses.

First of all, I am satisfied that plaintiffs, having completed the purchase of their lot from one Rose E. Bradley in September 1958, became the owners of a plot of land in Lewes lying southwesterly of Pilottown Road, having dimensions of approximately one hundred feet by two hundred fifty feet and adjoining lands now or formerly of

Thomas Virden, lands of Leota Bertrand, of Isabel D. Jacobs and of Rose E. Bradley. While the deed conveying such lot to plaintiffs is dated November 29, 1948, it is established by the testimony that plaintiffs did not take delivery of such deed until after they had completed payment for the property thereby conveyed in September 1958. In fact, the deed was not executed or acknowledged until such date, and was recorded on October 3, 1958. There is no doubt but that the notary public acknowledging the deed was in office in September 1958 when the deed was actually executed, acknowledged and delivered, and were there any real question about the validity of the acknowledgement of the deed (it having been executed by the proper party), § 132 of *Title* 25 *Del.C.* would serve to rectify such irregularity. In short, defendants failed to introduce any competent testimony which in any way casts doubt on the validity of plaintiffs' title to the area in question. Accordingly, plaintiffs, who at trial not only established their record title but also proved the boundaries of their lot as above described, are clearly entitled to have defendants enjoined from committing daily trespasses on such lands unless defendants' proof established the existence of a prescriptive right to cross plaintiffs' land in order to obtain access to their garage.

Turning to the facts on which defendants base their claim to a prescriptive right, it appears that in the late 1920's Elmer Bertrand, a brother-in-law of Mrs. Leota Bertrand and uncle of Mrs. Sheehan, who then resided in the Bertrand homestead, built the garage which has become the source of the present litigation. Dr. Bertrand, as a physician going about his daily rounds, then proceeded to make use of such garage by crossing lands to the south and east of it along the Counselman boundary, such lands at the time being owned by the Maryland, Delaware and Virginia Railroad Company. Such regular and constant use, which involved circumventing a railway turntable lying southeast of the Counselman line by driving close to such line, was made without the permission of the then landowner. Nonetheless, I am satisfied that Doctor Bertrand, who at the time was an active practitioner, continued to operate his motor vehicle over what later became lands of Rose Bradley and are now lands of the plaintiffs over a period of some twelve years or more until 1939 when he surrendered possession of the Betrand homestead to his sister-in-law.

While there was conflicting and irreconcilable testimony at trial as to the uses to which the strip of land in controversy was put during the period from 1939 until the autumn of 1958 when defendants, after having weeds and brush and at least one cherry tree removed from in front of their garage, proceeded to reactivate a road[1] through what is now the Hill lands, I am satisfied that plaintiffs must prevail as defendants have utterly failed to establish a case of continuous, hostile crossing of the lands in question over an unbroken period of twenty years. In fact, there is grave doubt that Dr. Bertrand's use of the right of way, particularly during its ownership by Mrs. Bradley, was in any degree hostile or under a claim of right. Mrs. Bradley, the successor in title to the lands in question after their purchase by her from the railroad and who had permitted Dr. Bertrands' use of a right of way over the lands in question evidently because of her husband's illness, testified that she barricaded such right of way only after the doctor moved from the Bertrand domicile in March, 1939.

While Mrs. Leota Bertrand came to the homestead shortly thereafter for summer visits during the years from 1939 to 1946 and lived there continuously from 1946 until 1950, she did not, according to her own testimony, ever own a motor vehicle during that period. Furthermore, from 1950 until 1954, when her son returned from a long period of hospitalization as a result of service incurred wounds, apparently neither Mrs. Bertrand nor her children lived in the house. Summer residence was definitely resumed in 1954, but there was no use of the claimed right of way for the purpose of reaching the Betrand garage by motor vehicle until late September, 1958 when the acts complained of were commenced. In fact until such time during the times when Mrs. Sheehan had a motor vehicle in Lewes and resided in the Bertrand homestead, she parked it on Pilottown Road, not attempting to use the garage allegedly because it contained a boat and a large detached motor. In any event she was not keen about crossing a badly kept and wooded yard at night in order to get from the garage to the home.

---

1. Dr. Bertrand's testimony throws some doubt as to whether the right-of-way claimed by defendants coincides with that used by him up to March, 1939.

In short, even if the evidence supported a finding that the use of the right of way by Dr. Bertrand was hostile and under a claim of right, after 1939 and up to October 1958 the use made of what is now the Hill land by owners or occupants of the Bertrand home was clearly sporadic and lacking in those qualities of visibility, continuity, notoriousness and exclusiveness, which carried on for the requisite length of time lead to the establishment of a prescriptive right in the lands of another. While there was testimony adduced at trial concerning the storing by Mrs. Bertrand's husband and son of a boat, fishing equipment and the like in the garage during substantial periods following Dr. Bertrand's surrender of possession in 1939, as well as evidence of the occasional use of the strip by trucks hauling material to or from the garage, none of this use was regular or continuously related to the dominant tenement, as had been Dr. Bertrand's use from the late 1920's until 1939. On the contrary, not only did Mrs. Bradley testify as to the closing off [2] of the controversial area after Dr. Bertrand's departure in 1939, but there was also the testimony of Mr. Hill as to his gardening activities throughout the entire lot over a period of ten years. Furthermore, a number of persons living in the vicinity testified as to the absence of any regular or continuous use of the area during recent years other than trips thereto by Mr. Hill. In fact, certain of such witnesses had no recollection of their being any type of road on the lands in question until October 1948 when defendants took steps to clear out a way to the Bertrand garage.

The applicable law in a case such as this is set forth in the case of *Hughes v. Abbott, 32 Del.Ch.* 328, 86 *A.2d* 358, 359 as follows:

"In order for the plaintiffs to establish their legal right by prescription to the use and enjoyment of the right-of-way over defendant's land, they must show a continuous, uninterrupted and adverse use thereof, by them or those in privity with them, for a period of more than twenty years. There must be no substantial interruption of the continuity of possession and enjoyment. See *John v. Stayton*, 5 *Harr.* 448; *Pennington v. Lewis*, 4 *Pennewill*

---

2. Such closing off was not only an interruption of the previous user but corroborates Mrs. Bradley's testimony that Dr. Bertrand's use of the right-of-way from 1936, when Mrs. Bradley became the owner of its fee, was permissive.

447, 56 *A.* 378; *Baynard v. Every Evening Printing Co.,* 9 *Del.Ch.* 127, 77 *A.* 885; *Marta v. Trincia,* 26 *Del.Ch.* 94, 22 *A.2d* 519. However, in order for the use of the right-of-way to be continuous, it was not necessary that plaintiffs use it constantly; they needed only to use it as their needs might require, although they must have used it at such frequent intervals as to give notice to the owner of servient tenement that such a right was being claimed. *Stuart v. Johnson,* 181 *Md.* 145, 28 *A.2d* 837; *Jean v. Arseneault,* 85 *N.H.* 72, 153 *A.* 819."

Defendants, having failed to present clear and convincing proof of those elements of adverse use required to establish a prescriptive right in lands of another, will be permanently enjoined from committing further trespasses upon the lands of plaintiffs here in issue.

Order on notice.