ANGELO BUCELLA & another *vs.* ANGELO AGRIPPINO & others.

Suffolk.   March 29, 1926. — November 24, 1926.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Prescription.   Easement.*

Facts, found by a judge of the Land Court at the hearing of a petition for the registration of title to land, and reported by him in a decision which did not contain all the evidence, are not subject to review or revision on appeal to this court.

Where, at the hearing of a petition for the registration of title to land, a respondent claims a right of way over the petitioner's land and it appears that such right had been exercised by the respondent and his predecessors in title for more than twenty years, and that at one time a predecessor in title to the petitioner sought to stop the exercise of the rights, the questions, whether the respondent's exercise of such right then had been interrupted and thereafter became permissive only, were questions of fact, and findings in a decision by the judge, without a report of the evidence, that there was no interruption of adverse exercise of the rights by the respondent and that it had not become permissive only, will not be reviewed or revised on appeal.

A mere objection, not persisted in, by the owner of real estate to the exercise of a right of way over it does not, as a matter of law, necessarily interrupt the establishment of a claim to a right by prescription.

The mere fact, that one of several successive owners of property, who used a passageway over adjoining property under a claim of right, purported to convey that right of way with his land at a date before

there had been twenty years' adverse use under a claim of right, or that his successors in title in their deeds did likewise, did not prevent the acquiring of title by adverse possession by any one, who thereafter used the passageway under a claim of right for more than twenty years.

PETITION, filed in the Land Court on August 1, 1924, for the registration of the title to land on West Eighth Street and D Street in that part of Boston called South Boston.

The petition was heard in the Land Court by *Davis,* J. The judge found in substance that the property of the petitioner and of the respondents in 1870 was owned by one Holmes as a trustee. In January of that year Holmes conveyed to John and William Cavanagh a parcel which included the property that finally came to the respondents Agrippino and the westerly portion of land which finally came to the respondent Einingis, and in February conveyed to one Bell the parcel which finally came to the petitioners. By a division between the Cavanaghs, the land of the respondents came to be owned by William Cavanagh, in 1873. From 1873 to the time when the controversy between the parties arose, a year or two before 1926, "the petitioners' passageway was used for access to the rear door of the present Agrippino house, and for the purpose of taking out ashes and garbage therefrom. Cavanagh seems to have assumed, without any apparent justification, that he owned the petitioners' passageway. The passageway strip was below the grade of Eighth Street, and was dangerous. Some children living in a tenement in the William R. Cavanagh house fell in, and Cavanagh thereupon built a gate across the Eighth Street end of the passageway. This was not locked, and was wholly for protection against accidents. It did not last long and Cavanagh then filled in and graded the passageway.

"Title to the petitioners' land was acquired in 1884 by deed running to Jacob M. Riha and Anna Riha his wife and remained in them and in his estate until 1919. Jacob M. Riha died intestate January 8, 1904. At the time the Rihas bought there was a gate across the passageway at Eighth Street. Mrs. Riha had a lock put on it and gave a key to the tenant in the Cavanagh house.

"In 1889 Cavanagh granted to Hyland" who, in 1872 had acquired the land which completed the parcel owned at the time of the hearing by the respondent Einingis, "a right of way over the passageway in question, which was wholly on the Riha land, and this grant was recorded together with a plan of the Hyland land showing the passageway running out to Eighth Street. Cavanagh had no apparent right to make this grant. He did not own the fee in the passageway, had no rights over it of record and had not had time to acquire any by prescription. Hyland sold in 1889 to one Donoghue together with the right of way as acquired from Cavanagh.

"The way continued to be used for the Cavanagh house, and in 1897 one Duran acquired the Cavanagh lot. During his ownership, which extended to 1919, a period of over twenty years, he used the passageway for access to his back door and for the removal of ashes and garbage. He repaired the gate from time to time and put on a lock, providing keys for himself and Mrs. Riha.

"In 1908 Donoghue conveyed the present Einingis property to one Markelis, with a right of way over the passageway to Eighth Street, and with that deed there was recorded a new plan showing the passageway. Mrs. Riha did not want the passageway used by Markelis who was a 'Polish man,' and tried to stop him from so doing, but he went to the police and a policeman scared Mrs. Riha. Thereafter when the ashmen came they would ring the bell, and Mrs. Riha would come down and unlock the gate. When she was not in, the tenants in the Duran house would do so.

"Duran sold to the Agrippinos in 1919, and Markelis sold to the respondent Einingis in 1923. The Riha estate sold to the petitioners in 1919.

"There has been no use of the way by the respondent Einingis land except for the removal of ashes and garbage. Hyland used to hire boys to carry them out through the way in question. His successors have placed the ashes and garbage in the rear of their land and the city collectors have come in through the passageway and removed them. So

with the ashes and garbage from the present Agrippino property. They have been placed in the rear of their lot and removed by the city men over the passageway; but the way has also been continuously used for access to the rear door of what is now the present Agrippino property. All of this use has been continued for over thirty years."

The judge of the Land Court concluded as follows: "There is clear evidence that this use has been under a claim of right. The fact that there was no apparent foundation for the claim only makes the use the more adverse. There is no evidence to my mind that the use has been permissive on the part of the owners of the petitioners' land. Mrs. Riha's explanation of that use by the owner of the Agrippino land was that 'of course they used it; they were living there.' She did object to the use by the owners of the Einingis property and attempted to stop it, but got scared out. It is true that the only use for the Einingis land was for the removal of garbage and ashes, and that this was done by city employees; but it was a use for the benefit of, and appurtenant to, the Einingis land, and under a claim of right founded on the grant by Hyland in 1889 and repeated in all the deeds of that property.

"On these facts I find a right appurtenant to the Einingis land to use the passageway for the removal of ashes and garbage; and a right appurtenant to the Agrippino land to use the passageway both for the removal of ashes and garbage and for access to and from the rear of said lot."

A decision was entered in accordance to the conclusions of the judge. The petitioners appealed.

The case was submitted on briefs.

*S. D. Bacigalupo & A. P. Gay*, for the petitioners.

*G. A. McLaughlin*, for the respondents Agrippino.

WAIT, J. The findings of fact made by the Land Court are final. No claim for jury trial was made. G. L. c. 185, §§ 15, 16. *Levenson* v. *Ciampa*, 251 Mass. 379. *Mitchell* v. *Cobb*, 220 Mass. 60. They establish that the respondents Agrippino have a right in the passageway for access to the rear of their premises and for the removal therefrom of ashes and garbage; and that the respondent Einingis has

a right to use the passageway for the removal of ashes and garbage from his premises.

The petitioners have not argued that the decision is wrong so far as it deals with the rights of the Agrippinos. They contend, however, that no prescriptive right is established in the respondent Einingis because within twenty years the use he relies upon has been interrupted, has become permissive, and is traced, not through a lost grant, but through a recorded deed made by one clearly without right to convey. Whether his use was permissive, or has been interrupted, were questions of fact to be determined upon evidence which has not been reported. The cases cited above establish that we cannot review the findings of fact upon an appeal such as this. The objection made by the petitioners' predecessor in title, not persisted in, does not, as matter of law, necessarily interrupt the running of the prescription. *Bigelow Carpet Co.* v. *Wiggin,* 209 Mass. 542. Her entire conduct was to be considered, and even if her objection was once abandoned through fear, we cannot say that she did not acquiesce finally in the wrongful use. Nothing appears to show that she took any effectual steps to prevent it.

The theory of a lost grant is a legal fiction intended to meet the difficulty of contemplating the creation of a valid title in land by something other than a deed. It has been used to support a title really acquired by long continued adverse use and granted by public policy, see *Leonard* v. *Leonard,* 7 Allen, 277, 282; but it is not to be resorted to in order to defeat one. Moreover, the theory assumes the grant of the title asserted, and not the former existence of a deed which does not create or convey it. The theory is not displaced merely by proving the existence of an actual deed which is ineffectual to grant or transfer the easement. The language from *Atkins* v. *Bordman,* 2 Met. 457, 465, 476, quoted upon the petitioners' brief, is not authority for the proposition asserted by them that, where a deed is put in evidence and it appears that the grantor was without power to convey the easement purported to be granted, a pre-

scriptive right to the easement cannot be made out from other evidence and other facts.

Einingis could tack the periods of prescriptive use by himself, by Markelis, by Donoghue, by Hyland, and by Cavanagh. *Leonard* v. *Leonard, supra.*

The rulings of the Land Court were correct. The order for the decree is

*Affirmed.*