DOMINICK MARTA and MARY MARTA, ALEXANDER MONICO and MARIA MONICO, ANTONETTE MURIABITO, CARMINE CRISCONI and MADELINE E. CRISCONI, VINCENZO PARISI and VICTORIA PARISI, ROSE COROZZI, MARIA GIAMMATTASIO,

*vs.*

GIOVANNI TRINCIA, individually and GIOVANNI TRINCIA and FLAVIANO CALVERESE, trading as T. & C. Baking Co.

*New Castle, November 12, 1941.*

*H. Albert Young,* for complainants.

*Josiah Marvel, Jr.,* and *William Marvel,* of Marvel & Morford, for respondents.

THE VICE-CHANCELLOR: Complainants assert easements, in common with others, in an alley which lies along the rear of their lots. A few days before the institution of this suit, respondents began the erection of a wall lengthwise along the middle of the alley to block off and enclose a portion of the alley to which the respondent Trincia has record title. Complainants say that their rights extend to the use of the alley at its full width, claiming rights of way by prescription over the strip of Trincia's land. This is the point in dispute. They ask for an injunction to require the removal of the partially constructed wall and to prevent any further interference with their use of the alley for purposes of ingress, egress and regress between their premises and Lincoln Street into which the alley opens.

Complainants own separate lots fronting on the northerly side of Seventh Street in Wilmington in the block between Lincoln Street on the west and Scott Street on the east. The alley is along the northerly sides of these lots, is parallel with Seventh Street, and extends eastwardly from Lincoln Street about two-thirds of the distance to Scott Street. Approximately seventy-five feet east of Lincoln Street, the alley is intersected on its northerly side by an-

other alley which, to avoid confusion, will be referred to as a passageway. In this case, we are concerned with that portion of the alley which lies to the east of the intersecting passageway. The westerly portion of the alley, between Lincoln Street and the passageway, is adjacent neither to complainants' nor respondents' lands, and the right to use it is not in litigation.

It is alleged in the bill that the alley is six feet wide, but it appears from the evidence that it is somewhat wider, and complainants claim rights to use it at its actual width determined by its physical boundaries.

The southerly side of the alley is bounded by a fence which serves as an enclosure of the rear portion of the lots of complainants and others. In the case of all but one of the complainants, the deeds whereby they acquired title to their lots contain grants of the right to use an alley in the rear of their respective premises, and except in one of these deeds, the alley is stated to be three feet wide. The complainants do not have title in fee simple to any part of the bed of the alley.

Along the northerly side of the extreme easterly end of the alley is a building erected by the respondent Trincia. In line with the outer wall of this building is a wire fence, erected by Trincia, and running westwardly along the northerly side of the alley up to the intersecting passageway. Trincia owns the building and land to the north of the fence, (as well as land to the east of the end of the alley) and uses these properties in connection with the bakery business carried on by him and the respondent Calverese. The deeds whereby he acquired title fix the boundary of his property approximately in the middle of the alley, so that Trincia has the record title to the northerly half (a strip about three feet wide) of the portion of the alley between its easterly end and the intersecting passageway. Respondents began to build a wall along Trincia's true boundary line in the

alley, and if it should be completed, the width of this section of the alley would be reduced to less than half.

Although there is testimony to the contrary, the proofs impel the finding that the disputed portion of the alley has been located as at present for more than twenty years, bounded on its northerly side by the building at the easterly end during the entire time, and the remaining part by the wire fence at least since 1929, and theretofore, beginning not later than 1918, by a wooden fence in the same position. For more than twenty years the owners of the lots adjacent to the alley on the south have used it continuously and uninterruptedly, at its present width, as a passageway between their premises and Lincoln Street.

In *Cooper v. McBride,* 4 *Houst.* 461, 465, Chief Justice Gilpin said: "It is well settled that a continuous, uninterrupted adverse use or enjoyment of a way over another's land for a period of not less than twenty years, establishes a legal right to use and enjoy the same." Respondents contend that complainants have failed to prove that the use of the alley was adverse. In this connection they say that complainants' use has not been exclusive, but that the alley has been used by the owner and the public generally for a number of years, and that such use "negatives a presumption of the acquiring of rights by an individual." To establish an easement by prescription, the user need be exclusive only in the sense that it must not depend for its enjoyment upon a similar right in others; it must be exclusive as against the public at large, but two or more persons may independently acquire an easement by prescription to use the same road or way, and the easement may be acquired in common with the true owner. *Phillips v. Bonadies,* 105 *Conn.* 722, 136 *A.* 684; *Pennington v. Lewis,* 4 *Pennewill,* 447, 56 *A.* 378; 1 *Thompson on Real Property, (Perm. Ed.)* § 422; 2 *id.* § 515. Trincia himself testified that he used the alley about once a year after the erection of the wire fence. He and the other respondent have taken the position that before that time

there was no enclosure on the northerly side of the alley, and hence no definitely located way—issues of fact found against them. In this state of the record, it is difficult to see how they can consistently assert that Trincia's use of the alley has affected the character of complainants' user.

As to use by the public, respondents point to the testimony of certain of complainants' witnesses that "everyone" or "everybody" used the alley. The context, however, shows that these broad statements should not be taken literally, but rather that the witnesses meant that the owners and neighbors used the alley freely. In 1918, fences were established around Trincia's land, and after that, it is plain there could be no occasion for the general public to make use of the alley. The alley is "blind" in that it extends from Lincoln Street up to a lot owned by Trincia and stops there with no outlet to the next street. On the other hand, there was reason for complainants and their predecessors, as well as the neighbors, to use the alley, for their lots were immediately adjacent to it. It appears that there were gaps in the wooden fence through which persons could and did pass onto Trincia's land. But the proofs warrant the conclusion that any wanderings of strangers in the alley or through the fence were merely occasional, and were wholly separate from, and unrelated to the continuous use which the owners of the lots on Seventh Street made of the alley in going to and from their homes. The consequences of such continuous and uninterrupted user for more than twenty years were not affected by the use shown to have been made by others.

The user by the adjacent lot owners was so open and visible that Trincia must have known of it. He testified definitely that he never objected to anyone using the alley. There is no semblance of proof that the user was permissive. Under such circumstances, the adverse character of the user may be presumed. *Huggins v. McGregor*, 1 *Har.* 447; 1 *Thompson on Real Property, (Perm. Ed.)* § 418; 2 *id.* § 525; 17 *Am. Jur. p.* 981.

The absence of an intent to claim adversely is not shown, as respondents contend, by the testimony of the complainant Rose Corozzi, who acquired her lot in 1934, that her property ends "next to the galvanized fence", thus indicating an erroneous concept of her boundaries; nor by the testimony of Trincia that this fence was erected to protect his property.

Certain of complainants acquired their lots within the period of twenty years immediately preceding the first interference with the free use of the alley shown by the record, June 25, 1940, when respondents began the construction of the wall. Respondents say that these complainants cannot establish prescriptive rights to use the alley, because in the deeds of conveyance to them there is no specific grant of an easement to use the strip belonging to Trincia so as to permit tacking of the successive users. This contention is admittedly not applicable to the complainants Giammattasio, the Monicos, and the Parisis who acquired their lots in 1919. Nor can it apply to the complainant Antonette Muriabito, who together with one Rocco Muriabito, now deceased, acquired her lot by deed dated June 21, 1920, a few days before the beginning of the twenty year period. This leaves to be considered the situation of the complainants who own the remaining three lots out of the seven here involved.

In order to make up the prescriptive period, successive adverse users by different persons may be tacked, but there must be privity between such persons. *Hoban v. Bucklin,* 88 *N. H.* 73, 184 *A.* 362, 186 *A.* 8; *Bucella v. Agrippino,* 257 *Mass.* 483, 154 *N. E.* 79; 1 *Thompson on Real Property, (Perm. Ed.)* § 446; 2 *C. J. S., Adverse Possession,* § 129, *p.* 686; 17 *Am. Jur. p.* 973.

The complainants who now own the three lots have, since acquiring them, used the alley at its full width. That their grantors did likewise is properly inferable from the undisputed testimony that during the period of more than twenty years the owners of the lots fronting on Seventh

Street so used the alley.  The deeds of conveyance to these complainants should be construed in the light of the facts and circumstances shown by the evidence.  The complainants Dominick and Mary Marta acquired their lot by deed dated in 1938.  The rear of their lot is described as bounded in part by the southerly side of an alley, the width of which is not stated.  Following the description is a grant of "the free and uninterrupted right, use and privilege in, to and over said alley in common with others entitled thereto forever."  The alley referred to in the deed is manifestly the one which was in fact at the rear of the lot.  This is the alley which the Martas' predecessors had used.  It is the one which the Martas used after the conveyance to them. This alley as it was physically bounded at the time of the conveyance, included the strip of Trincia's land.  It is reasonable to construe the grant in the deed to include all rights which the grantors had to use the alley, including those arising from adverse user.

Similarly, the other two lots, one acquired in 1934, and the other in 1930, are described in the deeds to the complainants Corozzi and the Crisconis, respectively, as extending from Seventh Street to the southerly side of an alley in the rear of the lots, but here the alley is stated to be three feet wide.  In each deed there is a grant of an easement of "the right, use and privilege in, to and over said alley in common with others entitled thereto forever."  Aside from the statement of the width of the alley, the factual situations are the same as in the case of the Martas.  Notwithstanding that the width is stated as three feet, it seems to me, again, that the deeds should be construed to transfer all rights of the grantors, rather than only part of their rights, in the alley as it actually existed.  The deeds as thus construed give rise to privity between the grantors and the grantees and warrant tacking of the successive adverse users.  *Hoban v. Bucklin, supra;* 1 *Thompson on Real Property, (Perm. Ed.)* § 446; 2 *C. J. S., Adverse Possession,* § 129, *p.* 687.

Respondents contend that there can be no appendant or appurtenant right of way over the part of the alley bed belonging to Trincia, because it is separated from the lots which complainants own in fee by a strip three feet wide over which complainants have merely an easement. This contention is based upon the proposition that a right of way may be appendant or appurtenant only when one terminus is on the land of the party claiming. Assuming, without deciding, the soundness of the asserted principle, it is inapplicable under the facts here for reason that it is in a single alley, immediately adjacent to their respective lots, that complainants claim easements. They rely upon rights acquired by deed and by prescription, but these relate to one and the same contingous alley.

Complainants have established easements in the alley. The partially constructed wall interferes with the exercise of their rights and should be removed, and further interference enjoined.

A decree accordingly will be advised.