**Colin ANOLICK and Elizabeth Anolick Plaintiffs,**

v.

**HOLY TRINITY GREEK ORTHODOX CHURCH, INC., Defendant.**

**C.A. No. 17897.**

Court of Chancery of Delaware,
New Castle County.

Submitted: Dec. 7, 2000.

Decided: Jan. 22, 2001.

Richard K. Herrmann, Julianne E. Hammond, Dale R. Dubé (argued), Blank Rome Comisky & McCauley, LLP, Wilmington, for Plaintiffs.

Dennis R. Spivack, Stephanie M. Tarabicos (argued), Morris, James, Hitchens & Williams LLP, Wilmington, for Defendant.

## MEMORANDUM OPINION

LAMB, Vice Chancellor.

### I. INTRODUCTION

The defendant owns a large parcel of land in the City of Wilmington. A 20–foot wide alley provides access from a side street to the rear of this land. Several other parcels of land also share a boundary with the alley, and some of the owners of those parcels use the alley as a driveway. In 1997, defendant erected a gate across the alley at a point where a gate had existed before the mid–1970s.

Plaintiffs use the alley to access a garage located at the rear of their property. The location of the gate interferes with the plaintiffs' use of the alley by making it more difficult for them to back their cars into or out of the garage. Plaintiffs claim that they are entitled to the unimpeded use of the entire length of the alley and seek an order requiring the removal of the gate, and other relief. The parties have cross-moved for summary judgment.

A careful review of the records leads me to conclude that the original 1884 deed for the parcel of land now owned by plaintiffs conveyed no interest in or right to use the alley. Rather, the alley came into existence later, when the grantor conveyed other parts of his lands in such a way as to define the alley, and conveyed the shared right to use the alley to those other grantees. For these reasons, I will deny plaintiffs' motion for summary judgment and allow defendant's cross-motion, to the extent that those motions relate to plaintiffs' rights claimed to derive from their legal chain of title.

There is, nevertheless, substantial evidence that plaintiffs and their predecessors-in-interest have obtained some rights to use the alley as a driveway by prescription, or adverse possession and use. The language in plaintiffs' deed granting them an interest in "a certain driveway leading from Ninth Street" to the rear of their lot first appeared in their chain of title in a 1960 deed. While this language is not evidence that the plaintiffs' original grantor conveyed any such right, it does show that, by 1960, the owners of the parcel had (or purported to have) the right to use the alley as a driveway. Similarly suggestive of the existence of such a right is the fact that plaintiffs' garage has been located in the same place since at least 1936.

From this, I have little trouble concluding that plaintiffs have the right to use that portion of the alley between their garage and the street as a driveway. I also am able to conclude from the record that this limited easement does not encompass the right to use the entire length of the alley but only so much of it as is necessary to enter or leave the garage. But the record does not currently allow me to determine whether the plaintiffs are entitled to the use of a small part of the alley now lying beyond the gate for the purpose of turning their cars when entering or exiting the garage. To that extent, the cross-motions for summary judgment will be denied.

## II. FACTUAL BACKGROUND

### A. Background of the Litigation

Holy Trinity Greek Orthodox Church is a Delaware not-for-profit corporation, owning a fee simple interest in a parcel of land located at 808 N. Broom St., Wilmington.

Colin and Elizabeth P. Anolick reside at and hold the fee simple interest in a parcel of land located at 815 N. Franklin St., Wilmington. These two parcels are parts of the same city block. The Anolicks sued Holy Trinity after Holy Trinity erected a gate across an alley that runs along the rear of both Holy Trinity's parcel and the Anolicks' parcel. The Anolicks claim to have the right to the use of the entire length of the alley and are seeking injunctive relief and damages for trespass, conversion, and nuisance resulting from the locked gate's presence in the alley. Holy Trinity filed a motion for judgment on the pleadings and plaintiffs countered with their cross-motion for summary judgment.[1] I heard oral arguments on the motions and, thereafter, asked that further research be done on the conveyancing history of the alley.

### B. Description of the Alley and the Gate's Placement

The alley in controversy is 230 feet 6 inches long and 20 feet wide. It extends south from Ninth St. into the middle of the city block bounded by Eighth, Ninth, Franklin, and Broom Streets in Wilmington. The rear property line of the Anolicks' parcel abuts the alley's eastern edge, beginning at a point 90 feet from Ninth St. and continuing south approximately 40 feet 6 inches. Holy Trinity's property abuts the alley on both its western edge, beginning at a point approximately 130 feet 6 inches from Ninth St. and continuing 100 feet to the end of the alley, and then along the entire 20 feet of the alley's southern edge. Six other parcels border this property at various points, but only the Anolicks and Holy Trinity are involved in this dispute. The following schematic diagram illustrates the existing situation.

---

1. Because defendant filed other supporting documents as well as affidavits with its motion for judgment on the pleadings, I will treat defendant's motion as a motion for summary judgment pursuant to Court of Chancery Rule 12(c).

**(Figure 1)**

As can be seen on Figure 1, the gate extends across the alley on a line that is parallel to the Anolicks' side lot line. The record shows that there was a gate in this same position from the 1930s until shortly after 1975. Although the presence of the gate does not prevent the Anolicks' use of the alley to access their garage, it does interfere with it. This is so because one side of the Anolicks' garage is on or near the same side lot line as the gate. Since the gate is closed, the Anolicks find it more difficult to get their cars out of their garage. Before the gate was erected, the Anolicks were able to back their cars out of the garage while turning the wheels in order to point the front of their car toward the street. Now, due to the presence of the gate, they find it necessary either to back down the length of the alley or back across the alley onto a neighbor's land before going forward down the alley to the street. They confront a similar problem if they want to back into their garage.

**C. Creation of the Alley**

Because the cross-motions require me to determine the respective rights of Holy Trinity and the Anolicks in the alley, I will need to go into some detail regarding the creation of the alley. The following schematic diagram illustrates the history of conveyances.

**(Figure 2)**

In 1852, Charles W. Howland ("Howland") owned most of the block in question. The rest of it (including all of the land facing Eighth St.—denoted on Figure 2 as the hatched rectangle bordering Eighth St.) was owned by D.H. Kent. By 1884, Howland began to divide his land along Franklin St. by conveying parcels with a uniform depth of 150 feet. These parcels extend back from Franklin St. to what is now the eastern boundary of the alley.

In 1884, Howland conveyed the Anolicks' parcel, 815 N. Franklin St., to Anna M. Jackson. The language of the deed describing the metes and bounds of the land conveyed does not refer to the existence of any alley. Neither does any other part of the deed make express reference to the existence of an alley or expressly convey to Jackson the right to the use of an alley. The only language in this deed to which the Anolicks can point as a source of their claimed rights to the alley is a general catchall, providing that the property conveyed is "[t]ogether with all . . . ways, . . . and appurtenances whatsoever thereunto belonging, or in any wise appertaining, . . . with the appurtenances . . . forever."

The year before the deed to Jackson, Howland conveyed as two parcels the land between Jackson's parcel and Ninth St.[2] In 1886, he deeded the parcels to the south of the Jackson parcel, 813, 811 and 809 N. Franklin St. All of these deeds are similar in form to the Howland–to–Jackson deed. None makes any reference to the existence of the alley or expressly conveys any interest in the alley. Each contains the same "catchall" reference to "all . . . ways" found in the Howland–to–Jackson deed.

The alley is first mentioned in the records in the 1889 deed from Howland to his

**2.** These parcels were later further subdivided in the fashion depicted on Figure 2, to create a total of six parcels, four fronting on N. Franklin St. and two fronting on Ninth St.

Only one of these six parcels abuts the alley. A review of the public records reveals that the deed to this property contains no express grant of rights in the alley.

son, C.S. Howland, conveying the lands later known as 808 N. Broom St. ("C.S. Howland parcel" on Figure 2). That deed refers to the alley in the metes and bounds description of the conveyance, in pertinent part as follows: "thence Easterly parallel with Ninth St. three hundred and seven feet to a point in the Westerly side of an alley twenty feet wide running parallel with Broom Street into Ninth Street, thence thereby Southerly one hundred feet." The deed also expressly conveys a right to use the alley. The language of that conveyance is as follows:

> With the free and uninterrupted right, use and privilege in and to the above referenced alley, running along the Easterly side of the above described lot, two hundred thirty six feet six inches into Ninth Street, in common with others entitle thereto forever.

Howland made two further conveyances of lands abutting the alley. In 1890, he conveyed to Martin Beadenkopf the parcel of land on Ninth St. abutting the western edge of the alley. In 1892, he conveyed to David Lindsay the parcel of land fronting on Broom St. south of the C.S. Howland parcel and abutting the 20–foot wide southern edge of the alley. Both the Howland–to–Beadenkopf and Howland–to–Lindsay deeds refer to the alley in the metes and bounds description and contain a grant of the right to use the alley substantially identical to that found in the Howland–to–Howland deed. These parcels are depicted on Figure 2.

## D. Acquisition of the Holy Trinity Parcel

Holy Trinity acquired fee simple title to its property on July 31, 1939. Its lands

are made up of four separate parcels, including the C.S. Howland parcel and the Lindsay parcel.[3] Its deed refers to the alley in the metes and bounds description of those two parcels and also contains the grant of rights in the alley found in the earlier deeds.

When Holy Trinity acquired title to these lands, a gate existed at the same position as the new gate at issue in this litigation. It also appears from the record that at the time Holy Trinity bought its lands, a chain-link fence ran along the alley from the point of the gate to the rear property line of the Lindsay lot, thus separating the alley from the rear of 813, 811 and 809 N. Franklin St. This fence exists today.

In support of its motion, Holy Trinity submitted the Affidavit of George Righos. Righos states that from the 1930s until 1975, when the church built a new Community Center, there was a building at the rear corner of the church's property that encroached somewhat onto the alley and prevented the gate from swinging to a fully open position. According to Righos, due the limitation on the opening of the gate, delivery trucks could, at most, park halfway through the gate. Righos states that before 1975, the "gate was kept closed at all times except when certain delivery trucks, trash vehicles, or other vehicles would use the alley." From 1975 onward, the gate was left open until it was removed by the church.[4]

## E. The Anolicks' Deed

The Anolicks bought 815 N. Franklin St. in 1985. Their deed contains the same

---

3. The other two parcels were comprised of the three parcels bordering Broom St. between the C.S. Howland parcel and Ninth St. These were later combined and subdivided to create two larger parcels, before becoming part of the Holy Trinity Parcel.

4. Mr. Anolick, in his affidavit, refers to an out-of-court statement from another neighbor who claims that the gate was not kept "locked" "during his 48–year residency." I do not rely on this statement due to its hearsay character.

metes and bounds description found in the Howland–to–Jackson deed, although it omits the "catchall" language found in that deed. It also contains the following words of conveyance:

> TOGETHER with all our right, title and interest in and to a certain driveway leading from Ninth Street along the Westerly border of the above described premises with others entitled thereto forever.

This language certainly refers to the alley.

Where did this language come from? In 1922, the property was purchased by Paul E. Thomaschewski (who later changed his name to Paul E. Thomas). The deed given to Thomas does not contain any reference to a driveway or an alley. Moreover, its metes and bounds description does not refer to the existence of the alley.

There is evidence, however, that Thomas used the alley as a driveway. The 1936 Property Atlas of the City of Wilmington contains a map of the block in question. (Exhibit C to the Affidavit of Stephanie Tarabicos, Esq.) This map shows the garage that is still located at the rear of the Anolicks' property, 815 N. Franklin St. From this, it may be inferred that Thomas and his family were making use of the alley as a driveway at that time. In 1960, Thomas's heirs sold the property to Michael–Stephen, Inc. The deed evidencing that conveyance is the first recorded document containing the language quoted above on which the Anolicks rely.

The Anolicks took title to their parcel on August 6, 1985. They maintain that the alley was not gated when they took title to the parcel, and that they used the alley on a daily basis to enter and exit their garage. They also claim to have made use of the full length of the alley, to stroll, to park cars, or to gain access to the church's property. Finally, the Anolicks maintain that the gate is also unsightly, collecting wind blown garbage as well as snow during the winter.

## III. LEGAL ANALYSIS

### A. Standard of Review

■ Defendant's motion for judgment on the pleadings will be treated as a motion for summary judgment under Court of Chancery Rule 12(c). Summary judgment is appropriate where there are no questions of material fact and a party is entitled to judgment as a matter of law.[5] The presence of cross-motions "does not act *per se* as a concession that there is an absence of factual issues."[6] Therefore, in order for summary judgment to be appropriate, I must find that there is no factual dispute that would preclude an entry of summary judgment in this matter.

### B. The 1884 Conveyance to Jackson

■ I first turn to the 1884 deed from Howland to Jackson. Under settled rules of deed construction, the scope of a grant of an easement "depends upon the meaning of the language of the deed in the light of the intention of the parties as determined by the surrounding facts and circumstances."[7] The Howland–to–Jackson deed does not explicitly refer to the alley or grant any easement or other rights in the alley. Thus, putting to one side the "catchall" language (conveying the property "Together with all ... ways ... and appurtenances whatsoever thereunto belonging, or in any wise appertaining ..."), the Anolicks cannot rely on that deed as a source of rights in the alley.

Thus, the issue is whether that "catchall" language can be read as having con-

---

5. Ct. Ch. R. 56.

6. *United Vanguard Fund, Inc. v. TakeCare, Inc.*, Del.Supr., 693 A.2d 1076, 1079 (1997).

7. *Maciey v. Woods*, Del.Supr., 154 A.2d 901, 904 (1959).

veyed to Jackson an easement in the alley. I analyze this in two ways. First, did the "catchall" language of the conveyance operate at the time of the 1884 deed to grant a presently exercisable easement in the alley? And, second, did that language create a right to an easement exercisable in the future when the alley came into existence?

First, the pattern of Howland's conveyances of lots on the block provides no evidence that the alley existed in any form at the time of the 1884 conveyance to Jackson. Howland first conveyed the lots facing N. Franklin St. to a uniform depth of 150 feet, leaving the remainder of the lands owned by him undivided. There is no record of a deed creating the alley for common use of persons acquiring property along N. Franklin St. and no reference to any such alley in any of the deeds Howland gave along N. Franklin St. Instead, the evidence of record shows that the alley first came into existence as a separate parcel only when Howland conveyed 808 N. Broom St. to his son in 1889. Reading the Howland–to–Jackson deed in the light of this evidence of record of the "surrounding facts and circumstances," I am unable to conclude that the parties to that deed intended it to convey any easement over any part of Howland's remaining lands.[8]

The silence of the 1884 Howland–to–Jackson deed contrasts sharply with the three deeds, dated between 1889 and 1892, describing the alley and specifically granting the right to use the alley to the grantees of those conveyances, in common with others sharing the same right. These deeds are to the Lindsay, C.S. Howland, and Beadenkopf parcels. Not one of the original deeds to the properties facing N. Franklin St. contains language to the same or similar effect. Indeed, those deeds do not even mention the alley in their metes and bounds description, notwithstanding that the rear lot line of each parcel abuts the land that became the alley. This conveyancing history strongly suggests that Howland intended to grant the right to use the alley only to the holders of those three parcels.

Second, I am unable to read the "catchall" conveyance in the Howland–to–Jackson deed as having granted Jackson an easement in any future alley or other "way" that Howland or any of his successors-in-interest thereafter chose to locate on land adjacent to the Jackson parcel. This situation is distinguishable from that in which a developer files a record plan of development showing roads or alleys to be constructed in the future and then sells property adjacent to them. In such a case, the record plan may be considered by a court in construing a deed.[9] In fact, even an unrecorded plan on which the purchasers relied may be introduced as proof of the parties intention.[10] Here, there is no record plan of development and no evidence of any kind suggesting that, at the time of the Howland–to–Jackson deed, either Howland or Jackson contemplated that there would ever be an alley located adjacent to the lands conveyed to Jackson. There was, I conclude, no restriction on Howland's freedom to dispose of the land now comprising the alley in whatever manner he chose.

These factors lead me to conclude that the Howland–to–Jackson deed conveyed no right, title or interest in the alley. Thus, the Anolicks cannot have obtained any such right as a result of that deed.

---

8. The fact that there was no alley in existence in 1884 also distinguishes this case from those implying easements over private roads. *See, e.g., Tindall v. Corbi,* Del.Ch., 145 A.2d 247, 249 (1958).

9. *Id.*

10. *See, e.g., Maciey v. Woods,* Del.Supr., 154 A.2d at 902 (noting unrecorded plat showing proposed road that was never built).

## C. The 1960 Deed and Prescriptive Rights

The 1960 deed from Thomas to Michael–Stephen, Inc. does purport to convey to the grantee all of the grantors' "right, title and interest in and to a certain driveway leading from Ninth Street." This same language has appeared in subsequent deeds, including the Anolicks' deed. The question is whether the Thomases had any right to convey and, if so, what the scope of those rights is.

■ It is elementary that the 1960 deed could not convey a greater bundle of rights than the Thomases held.[11] If one looks only at the record of the conveyance to Paul E. Thomas in 1922, it is clear that his heirs had no more rights in the alley than Jackson had. That is to say, from the state of the record, the Thomases had no rights in the alley at all. It is possible that there is some other unrecorded, written evidence of a conveyance of rights to Thomas from someone with the power to make such a conveyance. But none has been found or made a part of the record in these proceedings.

Under the circumstances, there are several avenues available to the Anolicks.

First, they could argue that the Thomases acquired the rights they purported to convey in the 1960 deed by adverse possession, or prescription. Second, they could argue that they or others owning the property since 1960 acquired other or greater prescriptive rights to use the alley than those conveyed by the Thomases.

While generally disfavored,[12] prescriptive easements are recognized in Delaware. As this court held in *Forwood v. Delmarva Power & Light Co.*, to establish a prescriptive easement, a party must establish by clear and convincing evidence[13] that "she, or a person in privity with her, used the disputed property: (i) openly, (ii) notoriously, (iii) exclusively, and (iv) adversely to the rights of others for an uninterrupted period of twenty (20) years."[14] There is evidence in the record that Thomas or his heirs used the alley beginning no later than 1936 for the purpose of a driveway, i.e., to travel from the street to the rear of 815 N. Franklin, where a garage stood. Indeed, the presence of the garage suggests that the Thomases made continuous use of the alley to access Ninth St. from their garage. This evidence tends to support an inference that the Thomases acquired an easement over the alley by prescription on which the Anolicks would be entitled to rely.[15] The 1960 deed is

11. "[N]o deed can operate so as to convey an interest which the grantor does not have in the land described in the deed, or so as to convey a greater estate or interest than the grantor has." 23 Am.Jur.2d *Deeds* § 336 (1983).

12. *Berger v. Colonial Parking, Inc.*, Del.Ch., C.A. No. 8415, 1993 WL 208761, mem. op. at 7, Hartnett, V.C. (June 9, 1993) ("[P]rescriptive rights are disfavored because they necessarily work forfeitures of existing property rights.").

13. *Lickle v. Frank W. Diver, Inc.*, Del.Supr., 238 A.2d 326, 329 (1968).

14. Del.Ch., C.A. No. 10948, 1998 WL 136572, mem. op. at 19, Lamb, V.C. (Mar. 16, 1998).

15. With respect to the element of exclusivity, this court stated in *Marta v. Trincia:*

> [T]he user need be exclusive only in the sense that it must not depend for its enjoyment upon a similar right in others; it must be exclusive as against the public at large, but two or more persons may independently acquire an easement by prescription to use the same road or way, and the easement may be acquired in common with the true owner.

Del.Ch., 22 A.2d 519, 520 (1941). While the Anolicks shared use of the alley with Holy Trinity and neighboring parcels, their use was exclusive as to the public at large.

further proof that prescriptive rights were acquired during this time, since the Thomases purported to sell their rights in the alley along with the house and land.

Holy Trinity does not contest the conclusion that the 1960 deed conveyed some set of rights to use the alley. The issue is the scope of the rights thereby conveyed. The problem the Anolicks fail to overcome is that the record reflects that during the time the Thomases maintained a garage at the rear of 815 N. Franklin, there was a gate in the same place as the new gate stands, which was kept closed and locked. So, to the extent the Thomases acquired a prescriptive easement permitting them to use the alley, that easement related only to the portion of the alley lying between the gate and the street.

Does the record support a conclusion that the Anolicks possess an easement greater in scope than that conveyed by the 1960 deed? Plaintiffs assert that since 1985 (when they bought the property) they have used the alley daily to enter and exit their garage. This use was consistent with the easement contained in their deed. But it was also slightly larger than that easement because, due to the absence of a gate between 1985 and 1997, they were able to exit their garage by backing onto the section of the alley formerly barricaded by the church's gate. Moreover, Mr. Anolick states in his affidavit that he and his wife also used the alley over the last 12 years for occasional strolls or for visits to his N. Franklin St. neighbors.

To be open and notorious, the use "must be so open, visible, and apparent that it gives the owner of the servient tenement knowledge and full opportunity to assert

his rights."[16] With respect to maneuvering the car when exiting the garage, I am satisfied that this would satisfy the open and notorious requirements. Mr. Anolick testified that he used the alley on almost a daily basis to exit his garage, including the short portion of the alley needed to turn. This daily usage was open and visible, and Holy Trinity, as one of the parties sharing express rights in the alley, should have had knowledge that the Anolicks were using a portion of the alley to the south of their garage as part of their otherwise permitted use.[17]

However, where the Anolicks fall short is in establishing that they have used the driveway "adversely to the rights of others for an uninterrupted period of twenty (20) years."[18] Plaintiffs only owned their parcel (and hence used the alley) for a period of 12 years before the gate was erected in 1997. While plaintiffs can tack their adverse use with that of their predecessors-in-title, they have not adduced evidence that their immediate predecessors-in-title used the alley in the same manner as they claimed to have used it before the erection of the fence.

Holy Trinity states in its opening brief that the gate was kept open after 1975, and removed some time later. From this, the court might infer that plaintiffs' predecessor-in-title also backed into a portion of the alley when exiting the garage. However, as with all elements in a prescriptive easement claim, plaintiffs need to adduce clear and convincing evidence before me to justify this claim.

With respect to plaintiffs' claims that they use the alley for strolls or visits to neighbors, I am convinced that this usage

---

16. 25 Am.Jur.2d *Easements and Licenses* § 60 (1996).

17. *See Rowe v. Everett,* Del. Ch.1967–S, 2000 WL 1655233 at *5, Glasscock, M. (July 31, 2000) (Report) (Oct. 25, 2000) (finding use of

parcel as a driveway for a period of several years satisfied requirements of being open and notorious).

18. *Forwood,* C.A. No. 10948, 1998 WL 136572, mem. op. at 19.

is no more than occasional. "Sporadic and casual uses are generally not open or notorious."[19] Thus, it is insufficient to support the finding of a prescriptive easement to use the entire length of the alley.

## IV. CONCLUSION

For all of these reasons, I find that plaintiffs have not established and will not be able to establish an express grant of an easement in the alley located behind their parcel; therefore, summary judgment is entered in favor of defendant on this claim. However, plaintiffs do own an easement by prescription to use the portion of the alley between the gate and the street as a driveway and may be able to prove their right to use a small portion of the alley beyond the gate to maneuver their cars when entering or leaving their garage. Counsel are instructed to submit a form of order to me within ten days disposing of the issues decided in this opinion.

**19.** Restatement (Third) *Property (Servitudes)* § 2.16 cmt. h, illus. 19 (Tentative Draft No. 3, 1993).