**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

EVERETT W. JONES, III, and ) 
MARGARET E. DAYTON, )
                                )
            Plaintiffs, )
                                )
        v.                     )     C.A. No. 2020-0149-MTZ
                                )
WILLIAM T. COLLISON, )
                                )
            Defendant. )

## POST-TRIAL FINAL ORDER AND JUDGMENT

WHEREAS, upon consideration of the record presented at trial in this matter, held on September 1 and 2, 2021, it appears:

A.      This action is another chapter in a longstanding property dispute between neighbors. Their feud has been "anything but neighborly."[1] This order addresses the only outstanding issue remaining in this matter: whether plaintiffs Everett W. Jones and Margaret E. Dayton (together "Plaintiffs") have established a prescriptive easement on land owned by defendant William T. Collison ("Defendant"). I conclude they have not. I limit my recital of the facts to only those necessary to resolve this issue; a more thorough explanation of the parties' dispute appears in the post-trial opinion resolving the Superior Court companion case.[2] In

---

[1] *Dayton v. Collison*, 2020 WL 3412701, at *1 (Del. Super. June 22, 2020), *aff'd*, 250 A.3d 763 (Del. 2021) (TABLE).

[2] *See generally id.* at *1–6.

addition to those facts, which the parties agree are binding,[3] the trial record in this matter includes sixty-seven exhibits and live testimony from eight witnesses.[4]  I also visited the property in question, at Plaintiffs' request.[5]  I find the following facts after trial.

B.      Plaintiffs and Defendant own adjacent parcels on Squirrel Lane, a comfortable cul-de-sac in Newark, Delaware.[6]  Plaintiffs have lived at 18 Squirrel Lane ("Plaintiffs' Lot") since January 2004.[7]  Before that, beginning in the spring of 1980, Plaintiffs' Lot was owned by William Fellner and Dana Ulery.[8]

C.      Defendant has lived at 19 Squirrel Lane ("Defendant's Lot," and together with Plaintiffs' Lot, the "Lots") since May 11, 2009.[9]  Before that, beginning in April 1987, Defendant's Lot was owned by Ronald Kraatz ("Kraatz")

---

[3] *See* Docket Item ("D.I.") 69 at 16–24.

[4] Citations in the form "Tr. —" refer to the trial transcript, available at D.I. 71 and D.I. 72. Citations in the form "PX —" refer to Plaintiffs' trial exhibits; citations in the form "DX —" refer to Defendant's trial exhibits.  *See* D.I. 66; D.I. 67.

[5] *See* D.I. 61 at 36.

[6] *Dayton*, 2020 WL 3412701, at *1.

[7] *Id.*; Tr. 8; D.I. 61 at 3.

[8] Tr. 152–53; PX 41.

[9] *Dayton*, 2020 WL 3412701, at *1; Tr. 10, 103, 114; PX 37.

and Diane Kraatz. [10]    Charles Peters ("Peters") and Marclla Peters owned Defendant's Lot before the Kraatzes, starting in August 1974. [11]

D.    Plaintiffs' Lot is uphill of Defendant's Lot. [12]  The Lots abut designated public parkland owned by the City of Newark (the "Parkland"). [13]  The Parkland slopes downward into the nearby Christina River. [14]  When it rains, water runs from Plaintiffs' Lot onto Defendant's Lot. [15]  Gutters on the downhill side of Plaintiffs' house contribute to that runoff. [16]  In the absence of a drainage system, sitting water naturally gathers somewhere around the property line, flooding parts of both Lots. [17]

E.    While the parties' interpersonal dispute is broad, it has manifested in litigation over decades of efforts to solve these drainage problems.  Plaintiffs claim that an underground stormwater drainage pipe running from Plaintiffs' Lot onto Defendant's Lot established a prescriptive easement in their favor.  To prevail, they

---

[10] PX 3; *see also* PX 51.

[11] PX 39.

[12] PX 4; *see also* Tr. 27–28, 154.

[13] *See* PX 1; PX 2 at 1; PX 46; PX 47; PX 48; PX 49.

[14] *See* PX 4; *see also* PX 2 at 1.

[15] PX 4; PX 49.

[16] *See* PX 16 (depicting downhill side of Plaintiffs' house, taken from Defendant's Lot); *see also* Tr. 44–47.

[17] *See, e.g.*, PX 27; PX 28; PX 29; PX 30; PX 31; PX 33.

must prove several characteristics of that pipe by clear and convincing evidence.[18]

But not all of them are so clear.

     F.     The first iteration of the drainage pipe (the "Original Drainage Pipe")

was in place by at least April 1987.[19]  It was almost certainly installed before then,

likely before 1980.[20]  The Original Drainage Pipe hooked to a gutter on Plaintiffs'

house, ran underground through Plaintiffs' Lot, and under the rear portion of

---

[18] *Savage v. Barreto*, 2013 WL 3773983, at *3 (Del. Ch. July 17, 2013).

[19] Kraatz testified that the Original Drainage Pipe was present when he moved into Defendant's Lot in April 1987.  *See* PX 51 ¶ 6; Tr. 164–67.  Kraatz's neighbor Fellner testified that underground drainage pipes were in place during his entire Squirrel Lane residency, which he did not install or modify.  *See* Tr. 152–54.  Plaintiffs' and Defendant's version of events are consistent with a drainage pipe in place during that time.  *See id.* 30, 115–16; PX 8 at 1.

     I acknowledge that the sworn declaration signed by Peters, who owned Defendant's Lot before the Kraatzes, disputes this finding.  That November 17, 2020 declaration, submitted by Defendant and drafted by Defendant's counsel, states, "When we sold the [Defendant's Lot] to Ronald and Diane M. Kratz [sic] in April 1987, I was not aware of an underground drainage system or drain box under my property."  DX 10 ¶ 2; *see* Tr. 133.  It goes on to state that Peters did not agree with Kraatz's and Jones's statements and that he "would have noticed and been aware of a discharge pipe at the end of my property near the [Parkland]."  DX 10 ¶ 3.  Defendant relied on Peters's declaration to avoid summary judgment and generate a dispute about when the Original Drainage Pipe was installed.  *See* D.I. 24 at 3, 7; *see also* Tr. 134.

     But I cannot give this declaration any weight.  Peters's trial testimony made plain that he has, for quite some time, had no memory of his time at Squirrel Lane, which ended over thirty-three years before he signed the declaration counsel drafted.  Peters was frail and had trouble responding to questions.  Peters was assisted during his testimony by his sister, Mary DiBartolo, who confirmed Peters suffers from dementia.  *See* Tr. 149.  While Peters appears to have signed his declaration, I cannot credit the declaration or his testimony.

[20] *See* Tr. 152–54.

---

4

Defendant's Lot, where it discharged near the Parkland.[21] The Original Drainage Pipe was periodically vented.[22] At various times, there were several rocks placed at the discharge point to help prevent water sheeting out of the pipe.[23]

G.     There is no contemporaneous evidence of who installed the Original Drainage Pipe or whether the installer had permission to place it on his neighbor's property. It was installed long before Plaintiffs and Defendant moved into the Lots in 2004 and 2009; their predecessors, Kraatz and Fellner, testified it was in place when they moved in and that they did not alter it prior to 2007.[24] The only evidence in the record is Plaintiffs' own statements, through counsel, that the Original Drainage Pipe was "placed there with the consent of all former property owners"[25]

---

[21] *See, e.g.*, PX 1; PX 8 at 1; Tr. 53–54.

[22] *See* Tr. 13.

[23] *Id.* 13–14; *see* PX 15.

[24] *See* Tr. 152–54, 164–67; PX 51.

[25] PX 9 at 1 (referencing "[t]he severing of a rainfall drain pipe in April of 2017, which was, admittedly, located on your property, but had been placed there **with the consent of all former property owners** over twenty (20) years ago" (emphasis added)).

Defendant objected to my consideration of PX 9 under Delaware Rule of Evidence 408. Tr. 32. Rule 408 provides, in relevant part:

> **Prohibited Uses.** Evidence of the following is not admissible on behalf of any party either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in order to compromise the claim; and

and that "the former owners of the [Lots] agreed to the placement of a joint drainage pipe and drain that commenced on [Plaintiffs' Lot], and traveled across [Defendant's Lot]."[26] There is no credible evidence to contradict these statements. No other witness credibly testified about the Original Drainage Pipe's installation, and all claimed it was in place when they arrived on their properties.[27] I find whoever installed the Original Drainage Pipe had permission from both Lots' owners, as Plaintiffs asserted.

---

> (2) conduct or a statement made during compromise negotiations about the claim.

D.R.E. 408(a). PX 9 is a letter from Teresa J. Tabah, Plaintiffs' former counsel and Dayton's sister-in-law, to Defendant. Tr. 31, 80. It is dated May 30, 2017, months before litigation in Superior Court began. It does not make any offer or promise to settle any particular claim. Indeed, it does not reference a claim at all. Rather, it outlines a "multitude of issues that have arisen with respect to the [Lots]," indicates that those actions "may have substantial legal consequences," and requests that Defendant "cease and desist from any further action that may have any impact on the [Plaintiffs' Lot]," warning that "[f]ailure to do so could result in significant legal damages." PX 9 at 1–2. The letter's boilerplate "request that [the parties] set up a time to discuss these matters further" does not transform what is otherwise a cease-and-desist letter into a "statement made during compromise negotiations about [a] claim." D.R.E. 408(a)(2); *see also Grunstein v. Silva*, 2011 WL 378782, at *6 (Del. Ch. Jan. 31, 2011) (rejecting motion to strike under Rule 408 where the letter in question "does not explicitly offer to settle a claim" and "does not appear to represent an offer in compromise"). Defendant's objection is overruled.

[26] DX 1 ¶ 23 (alleging, in Plaintiffs' verified complaint in Superior Court, that "[o]ver thirty (30) years ago, ***the former owners of the [Lots] agreed to the placement of a joint drainage pipe and drain*** that commenced on [Plaintiffs' Lot], and traveled across [Defendant's Lot]." (emphasis added)); *see id.* at 21 (affirming the allegations in the complaint are true and correct); *see also* DX 2 ¶ 6(D) (repeating similar language in Plaintiffs' amended complaint).

[27] I did not find Jones's testimony distancing himself from Plaintiffs' earlier admissions or twisting their meaning to be credible. *See* Tr. 80–88.

6

H.     The Original Drainage Pipe became clogged by natural debris and roots, and did not drain well.[28]  After arriving on Plaintiffs' Lot in 2004, Plaintiffs made changes to correct this problem.  In 2005, Plaintiffs attached additional lines from their house to the Original Drainage Pipe.[29]  In July 2007, Jones and Kraatz, who then owned Defendant's Lot, agreed to improve the drainage system.[30]  "[A]fter obtaining Mr. Kraatz's approval, Plaintiff Jones reconfigured the drainage system for the water runoff of both [Lots].  Plaintiff Jones installed a drain box underground where the drain lines for [the Lots] met [(the "Drain Box")]."[31]  This system drained rainwater that would otherwise naturally pool in the swale between the Lots, flooding both properties.  The Drain Box straddled the property line between the Lots, but was mostly on Defendant's Lot.[32]  In addition to adding the Drain Box, Jones and Kraatz rented a backhoe, replaced the Original Drainage Pipe with new four-inch corrugated plastic piping, and tied gutters from Kraatz's house on Defendant's Lot into the system (the "Modified Drainage Pipe").[33]

---

[28] *See, e.g.*, Tr. 20–24, 159.

[29] *See* Tr. 22–23.

[30] *Dayton*, 2020 WL 3412701, at *2.

[31] *Id.*

[32] *Id.*

[33] *See* Tr. 19, 22–27, 158–62; PX 8 at 1; PX 51; *Dayton*, 2020 WL 3412701, at *2.

I.      In May 2009, Kraatz moved out and Defendant moved into Defendant's Lot.[34]  Plaintiffs and Defendant lived in relative peace for several years and had neighborly interactions.[35]  In 2017, a bitter feud erupted between Plaintiffs and Defendant.[36]  The shared drainage system was caught in the crossfire.  During the summer of 2017, Collison filled the Drain Box with soil, severed the drain line, and eventually ripped the Drain Box and portions of the Modified Drainage Pipe out of the ground.[37]  Defendant also hired a landscaper to build a small berm between the Lots, preventing water from flowing from Plaintiffs' Lot onto Defendant's Lot.[38]  Defendant's actions have caused drainage problems and flooding on both Lots.[39]

J.      On August 8, 2017, Plaintiffs filed their initial complaint in the Delaware Superior Court, alleging claims for nuisance, destruction of property, prescriptive easement, and slander.[40]  On January 24, 2018, the Superior Court dismissed Plaintiffs' equitable claims, including their claim for a prescriptive

---

[34] *See* Tr. 10, 103, 114; PX 37 at 1.

[35] *See* Tr. 103–104.

[36] Despite hearing ample testimony about the subject, *see, e.g.*, Tr. 18–20, 118–20, I do not find it productive to outline the details of this war here.  The parties' antagonistic behavior was well-documented in the Superior Court's post-trial opinion.  *E.g.*, *Dayton*, 2020 WL 3412701, at *1–5; *see also, e.g.*, PX 14.

[37] *Dayton*, 2020 WL 3412701, at *2; Tr. 105; PX 18; PX 19.

[38] *Dayton*, 2020 WL 3412701, at *2, 5; *see* PX 10 at 1; Tr. 50–53; *see also* PX 26; PX 27.

[39] *Dayton*, 2020 WL 3412701, at *5.

[40] *Id.* at *6.

easement, for lack of subject matter jurisdiction.[41]  On December 11, 2018, the Superior Court granted Plaintiffs' motion to amend their complaint; Plaintiffs' amended complaint added a claim for trespass.[42]  Defendant also raised several counterclaims in Superior Court, including trespass, defamation, invasion of privacy, and infliction of emotional distress.[43]  On September 24, 2019, the Superior Court granted partial summary judgment for Defendant on some of Plaintiffs' claims.[44]  On November 6, 2019, the Superior Court began a three-day bench trial on that matter.[45]

K.      On March 2, 2020, during post-trial briefing in the Superior Court case, Plaintiffs filed their complaint in this action (the "Complaint").[46]  The Complaint includes four counts, all based on Plaintiffs' prescriptive easement theory.  Count I seeks an order quieting title to that claimed prescriptive easement.[47]  Count II seeks a permanent injunction preventing Defendant from interfering with that easement.[48]  Count III seeks a declaration that a prescriptive easement exists, and that Defendant

---

[41] *Id.*; *see also Dayton v. Collison*, 2018 WL 565304, at *1–2 (Del. Super. Jan. 24, 2018).

[42] *Dayton*, 2020 WL 3412701, at *6.

[43] *Id.*

[44] *Id.*; *see also Dayton v. Collison*, 2019 WL 4668157, at *3–11 (Del. Super. Sept. 24, 2019).

[45] *Dayton*, 2020 WL 3412701, at *7.

[46] D.I. 1.

[47] *Id.* ¶¶ 20–24.

[48] *Id.* ¶¶ 25–29.

unlawfully interfered with it; it also seeks damages to cover the cost of a new drainpipe.[49] Count IV alleges Defendant trespassed when he removed the Modified Drainage Pipe and seeks damages as a result.[50] Defendant answered the Complaint on April 6.[51] The Superior Court issued its decision on June 22, finding for Defendant on his invasion of privacy counterclaim, but otherwise dismissing all other counterclaims and all of Plaintiffs' claims.[52]

L.     Plaintiffs moved for summary judgment in this action on November 5.[53] I denied that motion via bench ruling on January 6, 2021, and stayed the case in view of the pending appeal of the Superior Court's post-trial decision.[54] On April 14, the Delaware Supreme Court summarily affirmed the Superior Court's decision.[55] This matter then went to trial on September 1 and 2.[56] After testimony on September 2, I visited the Lots, accompanied by counsel for both sides.[57] The parties asked the

---

[49] *Id.* ¶¶ 30–34.

[50] *Id.* ¶¶ 35–38.

[51] *See* D.I. 5.

[52] *Dayton*, 2020 WL 3412701, at *14.

[53] D.I. 21.

[54] D.I. 42.

[55] *Dayton*, 250 A.3d 763.

[56] D.I. 68; *see generally* Tr.

[57] *See* Tr. 123–24, 181–84.

10

Court to take the matter under advisement without post-trial briefing or argument, which I did on September 2.

M.     Plaintiffs' claims rest on their theory that the Original Drainage Pipe created a prescriptive easement.  The bar for establishing a prescriptive easement is high.  "Because easements by prescription work forfeitures, they are disfavored at law.  Therefore, the evidence that establishes an easement by prescription must be clear and convincing."[58]  Plaintiffs must prove four elements:

> [A] claimant seeking to establish a prescriptive easement must prove by clear and convincing evidence that she, or a person in privity with her, used the disputed property: (i) openly, (ii) notoriously[,] (iii) exclusively[,] and (iv) adversely to the rights of others for an uninterrupted period of twenty (20) years.[59]

Plaintiffs' burden of clear and convincing evidence requires evidence that "produces an abiding conviction that the truth of the contention is highly probable."[60]

---

[58] *Savage*, 2013 WL 3773983, at *3 (footnotes omitted) (citing *Dewey Beach Lions Club, Inc. v. Longanecker*, 905 A.2d 128, 134 (Del. Ch. 2006), and *Berger v. Colonial Parking, Inc.*, 1993 WL 208761, at *7 (Del. Ch. June 9, 1993)).

[59] *Dewey Beach Lions Club*, 905 A.2d at 134 (footnotes and internal quotation marks omitted) (quoting *Forwood v. Delmarva Power & Light Co.*, 1998 WL 136572, at *7 (Del. Ch. Mar. 16, 1998)).

[60] *In re Martin*, 105 A.3d 967, 975 (Del. 2014) (internal quotation marks omitted) (quoting *In re Bailey*, 821 A.2d 851, 863 (Del. 2003)).  This is an exacting standard:

N.     The fourth prong, that the claimant's use be adverse to the rights of others, places a burden on Plaintiffs to "prove by clear and convincing evidence that the use was not permissive."[61]  "A use is adverse or hostile if it is inconsistent with the rights of the owner.  The use must not be subordinate or subservient to the owner's rights."[62]  "[N]eighborly or friendly use of land . . . does not establish

---

The clear and convincing standard requires evidence that produces in the mind of the trier of fact an abiding conviction that the truth of the factual contentions is highly probable.  Similarly, the pattern civil jury instruction used by the Delaware Superior Court provides, in part, [t]o establish proof by clear and convincing evidence means to prove something that is highly probable, reasonably certain, and free from serious doubt.  We believe that this pattern jury instruction is a proper articulation of the standard.

*Hudak v. Procek*, 806 A.2d 140, 147 (Del. 2002) (footnotes, alterations, and internal quotation marks omitted) (compiling sources).

[61] *Dewey Beach Lions Club*, 905 A.2d at 134 (citing *Hardesty v. Baynum Enters. Inc.*, 1993 WL 133067 (Del. Ch. Apr. 19, 1993)).

Despite the clear and convincing evidence requirement, "this Court has held where the use of the disputed property is open and visible and where there is no semblance of proof that the use was permissive the adverse character of the user may be presumed." *Savage*, 2013 WL 3773983, at *6 (alterations and internal quotation marks omitted) (quoting *Cordrey v. Dorey*, 1996 WL 633293, at *4 (Del. Ch. Oct. 4, 1996)); *see Marta v. Trincia*, 22 A.2d 519, 521 (Del. Ch. 1941) ("The user [sic] by the adjacent lot owners was so open and visible that Trincia must have known of it.  He testified definitely that he never objected to anyone using the alley.  There is no semblance of proof that the user was permissive.  Under such circumstances, the adverse character of the user may be presumed." (citing *Huggins v. McGregor*, 1 Del. 447 (Del. Super. 1834))).  If Plaintiffs are not entitled to this presumption, their clear and convincing evidence burden remains.  *See Savage*, 2013 WL 3773983, at *7 n.58 ("Because the party seeking a prescriptive easement bears the burden of proving each element necessary for the creation of the easement by clear and convincing evidence, and because I find that Savage, Jr. is not entitled to a presumption in his favor as to hostility, his burden is to show hostility by clear and convincing evidence." (citation omitted) (citing *Lowry v. Wright*, 2006 WL 1586371, at *2 (Del. Ch. June 5, 2006))).

[62] *Berger*, 1993 WL 208761, at *4.

adverse use."[63]   And crucially, "[a] use is not adverse if it is made with the permission of the owner."[64]

**IT IS HEREBY ORDERED**, this 30th day of December, 2021, that:

1.     Plaintiffs failed to establish the necessary elements of a prescriptive easement by clear and convincing evidence.  The Superior Court found Jones and Kraatz jointly installed the Modified Drainage Pipe and Drain Box in July 2007, and that Jones sought and obtained Kraatz's approval.[65]  Plaintiffs cannot be heard to argue that modification was adverse to Kraatz's rights.  Thus, to prevail, Plaintiffs must show a prescriptive easement before the July 2007 modifications, and that the subsequent modifications did not destroy that easement.  Plaintiffs advance precisely this theory.[66]  But they have admitted that the Original Drainage Pipe's installation and use was permissive, not adverse.[67]  Because it was initially installed "with the

---

[63] *Dewey Beach Lions Club*, 905 A.2d at 136 (citing *Brown v. Houston Ventures, LLC*, 2003 WL 136181, at *6 n. 30 (Del. Ch. Jan. 3, 2003)).

[64] *Hardesty v. Baynum Enters., Inc.*, 1993 WL 133067, at *4 (Del. Ch. Apr. 19, 1993) (citing *Lickle v. Frank W. Diver, Inc.*, 238 A.2d 326, 330 (Del. 1968)); *see also Dewey Beach Lions Club*, 905 A.2d at 136 n.34 ("The relationship between plaintiffs and defendant as well as his predecessor in title was one of cooperation and neighborly accommodation, from which permission may be inferred." (alterations and internal quotation marks omitted) (quoting *Bookchin v. Maraconda*, 557 N.Y.S.2d 46, 47 (App. Div. 1990))).

[65] *Dayton*, 2020 WL 3412701, at *2.

[66] *See* D.I. 57 at 9.

[67] *See* PX 9 at 1; DX 1 ¶ 23.

permission of the [Defendant's Lot's] owner," the Original Drainage Pipe was permissive and not adverse.[68]

2. Plaintiffs' failure to establish a prescriptive easement dooms all four counts in their Complaint. They are not entitled to an order quieting title to their alleged easement, an injunction against Defendant's use of that easement, a declaration stating they have established that easement, or damages for trespass on that easement.

---

[68] *See Hardesty*, 1993 WL 133067, at *4; *see also* Restatement (Third) of Property (Servitudes) § 2.16 cmt. f (2000) ("A use that is initially permissive can become adverse only by express or implied revocation or repudiation of the license."). Plaintiffs argues "one jurisdiction has relaxed the adversity element" and that this Court should do the same. *See* D.I. 57 at 8 (citing Iowa law). Plaintiffs' argument is unpersuasive and inconsistent with Delaware law, which disfavors prescriptive easements. *See, e.g.*, *Savage*, 2013 WL 3773983, at *3.

Because the evidence in this matter provides more than a "semblance of proof" that the Original Drainage Pipe was permissive, Plaintiffs would not be entitled to the presumption of adverse use even if I were to find that the Original Drainage Pipe was "so open and visible that [the prior owners] must have known of it." *See Marta*, 22 A.2d at 521; *see also Savage*, 2013 WL 3773983, at *6; *Cordrey*, 1996 WL 633293. To conclude the Original Drainage Pipe was installed adversely, Plaintiffs would need to establish that at some point in the 1970s or 1980s, an unknown prior owner of Plaintiffs' Lot went onto Defendant's Lot and dug a trench, laid the Original Drainage Pipe, filled the hole, and replanted grass, all unnoticed or unbothered by the owner of Defendant's Lot. If this unlikely scene did occur, Plaintiffs have adduced no evidence of it.

14

3. For the foregoing reasons, judgment is entered for Defendant on all counts.

/s/ Morgan T. Zurn

Vice Chancellor Morgan T. Zurn
